BOWEN, Presiding Judge.
Ruth Alice Jones Chambers, the appellant, was convicted of reckless manslaughter in the death of John Martin Huffman, a Birmingham police officer. Huffman died as a result of injuries he sustained when he was struck by an automobile driven by the appellant. The appellant was sentenced to life imprisonment as a habitual felony offender. She raises four issues on this appeal of that conviction.
I
The appellant argues that the indictment was confusing and legally insufficient and that her request for a more definite statement should have been granted.
In pertinent part, the indictment charged that the appellant:
“did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said RUTH ALICE JONES CHAMBERS, ... and did thereby cause the death of John Martin Huffman, by striking him with her automobile while under the influence of controlled substances, to-wit: methadone, meprobamate and diazepam, in violation of Section 13A-6-2 of the Alabama Criminal Code. ...” C.R. 10.
In her “motion for more definite statement under the Alabama Rules of Criminal Procedure,” C.R. 44-47, the appellant complains that the indictment failed to allege that she was “under the influence of controlled substances to a degree which rendered her incapable of driving safely.” R. 44-45. In her motion, the appellant asserts:
“[2.] It is unclear from the plain reading of the indictment whether this Defendant, like many others, is being charged merely because she has physician prescribed, pharmacy filled, controlled substances in her system. Is this fact alone the reason for the Defendant’s being charged with murder?
“3. The Defendant had a tragic accident in which a policeman/pedestrian was struck and killed. What specifically was her conduct which manifested extreme indifference to human life? Was it her driving? Was it the condition of her automobile? Was it her competence to drive a car at all? Was the extreme indifference to human life the fact that she was taking prescription medication? This Motion for a More Definite Statement is absolutely essential to the defense of this charge. Defendant is unable to determine from the indictment whether she is called upon to provide an accident reconstructionist to determine whether she was at fault at all in the accident. The Defendant is unable to tell from the plain wording of the indictment whether she is called on to defend the fact that she had prescription medication in her system. The Defendant is unable to tell from the plain wording of the indictment exactly what her conduct was that manifested extreme indifference to human life and is, therefore, left wondering what her conduct was that manifested extreme indifference to human life, what evidence will be produced against her, and what the essential elements are charged and upon which she is called upon to defend.” C.R. 45-46.
That motion was denied. R. 164-68. In denying the motion, the trial judge stated, “I don’t think that you will be surprised by anything that [the prosecutor] tries to prove this week.” R. 165.
Rule 13.2(e), A.R.Crim.P., provides that a motion for more definite statement “shall be granted for good cause shown.”
“Section (e) provides a necessary safeguard for the defendant, in that for good cause shown the defendant can compel the state to submit additional details of the offense not required to be set out in the *1296 body of the indictment. Because of the ‘good cause’ requirement, it is contemplated that motions for more definite statement will not be routinely made or granted.”
Committee Comments to Rule 13.2. Whether a defendant has shown “good cause” that would necessitate the granting of the motion for more definite statement is a decision that rests within the discretion of the trial judge. Cf. Ex parte Tidmore, 418 So.2d 866, 868 (Ala.1982) (“Rule 15, [A.R.Civ.P., under which parties in a civil action “may amend” their pleadings] is not carte blanche authority to amend a complaint at any time. Discretion rests in the trial judge to deny amendments for good cause.”); Ex parte Old Mountain Properties, Ltd., 415 So.2d 1048, 1050 (Ala.), cert. denied, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) (“Protective orders, of the type asked for by the petitioner, are only issued ‘for good cause’ shown by the person seeking the protection.... The trial judge did not abuse his discretion by finding that ‘good cause’ did not exist in this ease. Petitioner had the burden, under Rule 26(c), A.R.C[iv].P., of showing adequate justification for its protective order.”); Williams v. Williams, 540 So.2d 68, 69 (Ala.Civ.App.1989) (“Rule 35(a)[, A.R.Civ.P.,] provides that a trial judge ‘may order’ a party to submit to a mental examination if the movant shows ‘good cause’ why it should be ordered. The necessity of a mental examination is left up to the broad discretionary powers of the trial judge....”); Taylor v. State, 507 So.2d 1034 (Ala.Cr.App.1987) (“Section 12-15-68, Code of Alabama 1975, provides that ‘[cjontinu-ances shall be granted by the court only upon a showing of good cause.’... [W]e find that the juvenile court judge did not abuse his discretion in denying the motion for a continuance [in] this [case].”); Johnson v. State, 335 So.2d 663, 672 (Ala.Cr.App.), cert. denied, 335 So.2d 678 (Ala.1976), cert. denied, 429 U.S. 1026, 97 S.Ct. 649, 50 L.Ed.2d 629 (1976) (“Even in jurisdictions where the granting of a bill of particulars is permissible, such rests within the discretion of the trial judge.”).
We find that the trial judge in this case did not abuse his discretion in determining that the appellant had not shown “good cause” for requiring the prosecution to respond with a more definite statement of the facts.
II
The appellant argues that the indictment is legally insufficient and void for vagueness because it did not charge her with driving under the influence of a controlled substance to such a degree that she was rendered incapable of safely driving.
This argument is an attempt to incorporate language from the statute defining the offense of driving under the influence, § 32-5A-191(a)(3),[1] into the statute defining the offense of murder, § 13A-6-2(a)(2).[2] However, the appellant was not charged with driving under the influence of a controlled substance in violation of § 32-5A-191(a)(3) or with vehicular homicide as defined in Ala. Code 1975, § 32-5A-192(a).[3] The appellant was charged with reckless murder as defined in § 13A-6-2(a)(2).
Although the fact that a defendant was driving a motor vehicle while under the influence of a controlled substance to such a degree that he was rendered incapable of safely driving may be presented as evidence that the defendant’s conduct was reckless, *1297 driving a motor vehicle under the influence of a controlled substance to a degree which renders one incapable of safely driving is not a statutory element of reckless murder as that crime is defined in § 13A-6-2(a)(2).
The indictment was clearly sufficient to charge the appellant with reckless murder. Because the indictment charged the appellant with reckless murder, and not with driving under the influence of a controlled substance, it was not necessary that the indictment include the phrase “to such a degree that she was rendered incapable of safely driving.”
Ill
The appellant argues that the trial court erred in allowing the prosecution access to the appellant’s confidential psychiatric and medical records from a drug treatment facility.
In a pretrial ruling on March 16, 1993, the trial judge issued the following order:
“This Court does hereby order Birmingham Metro Clinic to turn over to this Court for in camera inspection, certified copies of any and all records of Ruth Alice Jones Chambers, including, but not limited to, applications, diagnoses, treatments, prescriptions, doctors’ and nurses’ notes.
“A hearing was held on March 12, 1993,. on Birmingham Metro Clime’s Motion to Quash the State’s Subpoena for these records. Daniel Burniek, attorney for Birmingham Metro Clinic was heard as well as Deputy District Attorney, T. Michael Anderton.
“This Court is aware of 42 U.S.C. 290ee-3 concerning confidentiality of records of patients of a drug abuse facility assisted directly or indirectly by any department or agency of the United States. Further, this Court specifically notps the exceptions and limitations on disclosure as enumerated in 42 U.S.C. 290ee-3(b)(2)(C). In accordance with this section, this Court makes the following findings:
“(1) This Court is of competent jurisdiction.
“(2) Good cause has been shown by the State. In examining good cause, the Court has determined the public interest and the need for disclosure outweighs the injury to the patient, physician-patient relationship, and to the treatment services.
“(3) These records shall be released to this Court for in camera inspection and distribution to the parties involved as is appropriate and necessary to safeguard against unauthorized disclosure.
“Therefore, all the aforementioned records shall be turned over to this Court immediately so as to allow the Court and parties involved sufficient time to inspect said records.” C.R. 65-66.
During the trial, but out of the hearing and presence of the jury, the prosecutor attempted to have admitted into evidence “three specific entries on the methadone clinic records.” R. 848-49. After hearing the arguments of the attorneys, the trial court ruled that the records were not admissible. R. 855-57.
Because the records were not exhibited to the jury, because there is no indication that the jury was made aware of any information contained exclusively in the records, and because the trial, court ruled that the records and entries on the records were inadmissible at trial, we find that any error in the trial court’s granting of the subpoena for the appellant’s treatment records was harmless under Rule 45, A.R.App.P. For tips reason, it is unnecessary for this Court to determine whether the trial court erred in issuing of the subpoena for the confidential records. See generally Ex parte United Service Stations, Inc., 628 So.2d 501 (Ala.1993); Thompson v. Thompson, 624 So.2d 619 (Ala.Civ.App.1993).
IV
The appellant claims that she was entitled to a “change of venue” from the Jefferson County Criminal Justice Center to the Jefferson County Courthouse. The center and the courthouse are located in Birmingham and are almost across the street from each other. The basis for the appellant’s request is in the fact that in the plaza in front of the Criminal Justice Center there is a memorial to law enforcement officers who have died in the line of duty in Jefferson *1298 County. The memorial depicts a wounded and downed Roman centurión atop a granite base upon which are engraved the names of the deceased officers. Included in that list of names is the name of the victim and the date of his death. A bronze marker on the side of the base states: “This memorial is dedicated to all members of law enforcement who gave their lives in the line of duty.” The base also bears the prominent inscription “Endowed by Fraternal Order of Police Birmingham Lodge One.” C.R. 19, 25.
On voir dire of the jury venire the trial judge stated:
“I will ask you this, those that raised your hand [indicating that you recall seeing some news report about this incident], are there any of you that have formed any impressions about the case? Now, this, of course, is a criminal prosecution of the lady that the State says was driving the car with a high degree of culpability charged with murder. Anyone form some impression about the guilt or innocence of the accused person? All right.
“Let me mention to you this: Mr. Huffman’s name, ladies and gentlemen, appears on the monument at the entrance to the building. If you are like me you were probably rushed to get here this morning, get here on time, may not have had a chance to take note of the monument outside. The figure depicted there is known as the Centurion.
“This monument was dedicated back in October of ’91 to honor the people in law enforcement that lose their lives in the line of duty. And as I said, Mr. Huffman’s name is on there, the last one etched there in the wall. I call this to your attention because I want to be sure that you understand that the statute depicting Mr. Huffman’s name does not address itself in any wise to the purpose that you people will be concerned with this week.
“Out of your number here a group, a petit jury, if you will, a trial jury will be selected by the lawyers after lunch today that will decide what if any offense was committed back in May. The jury will decide if any culpability attaches to the lady, what level of culpability. And your verdict will be based on the evidence in court and the law as it applies.
“So, I just say to you out of an abundance of precaution that the inscription of Mr. Huffman’s name on the memorial in no way concerns the issue to this jury that will be selected, you understand that, I am sure.” R. 19-22.
There was no objection to these comments.
“It is well settled that the burden of proving improper venue is on the party raising the issue.” Ex parte Bennett, 622 So.2d 1307, 1308 (Ala.1993).
“An accused is entitled to a change of venue only ‘if he can demonstrate that he cannot receive a fair trial in the county where he is to be tried.’ Ex parte Fowler, 574 So.2d 745, 747 (Ala.1990). See Rule 10.1(b), A.R.Crim.P. (a criminal defendant may move for a change of venue if ‘a fair and impartial trial and an unbiased verdict cannot be had for any reason’). The accused has the burden of showing that he cannot receive a fair trial in the county in which he is indicted. Rule 10.1(b), A.R.Crim.P. See also Ala.Code 1975, § 15-2-20 (accused must ‘set[] forth specifically the reasons why he cannot have a fair and impartial trial in the county in which the indictment is found’). In moving for a change of venue, the accused may not rely on assumptions of bias but must prove ‘actual prejudice against the defendant.’ See Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).”
Stewart v. State, 623 So.2d 413, 415 (Ala.Cr.App.1993). A “‘proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.’ Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App.1978).” Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
In this case, we must assume that the jury venire followed the instructions of the trial judge.
“ ‘A crucial assumption underlying that system [the system of trial by jury] is that juries will follow the instructions given *1299 them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed.’ ”
Ex parte Stewart, [Ms. 1920509, September 3, 1993] — So.2d- (Ala.1993).
We find no error in the denial of the motion for change of venue.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. Section 32-5A-191(a)(3), Ala.Code 1975, provides:
“A person shall not drive or be in actual physical control of any vehicle while ... [hinder the influence of a controlled substance to a degree which renders him incapable of safely driving.”

. Section 13A-6-2(a)(2), Ala.Code 1975, provides:
"A person commits the crime of murder if ... [u]nder circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person.”

.Section 32-5A-192(a), Ala.Code 1975, provides:
“Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of homicide when such violation is the proximate cause of said death.”