660 So.2d 955 (1995)
Edgar R. Caballero MADRID
v.
POLEMBROS MARITIME CO., LTD.
No. 95-C-0545.
Court of Appeal of Louisiana, Fourth Circuit.
August 30, 1995.
Harold M. Wheelahan, III, Harold M. Wheelahan, III, PLC, New Orleans, and George Angelus, New Orleans, for plaintiff/respondent.
John H. Clegg, Eric J. Simonson, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendant/relator.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
Relator's application for supervisory writs is denied.
Relator, the defendant shipping agent, is complaining that the trial court failed to enforce an "Individual Working Contract" (IWC) signed by the plaintiff, a Honduran seaman. The IWC, which was written in English, specified:

ARTICLE I: ENGAGEMENT: The MASTER will engage the SEAFARER in accordance with the Agreement between the UNION OF GREEK SHIPOWNERS And the above Honduran seamens union its enclosures and amendments (if any) and to be executed with the utmost good faith.
The Memorandum of Agreement (MOA) between the Greek Shipowners and the Honduran Seamens Union was not attached to the IWC. The copy of the MOA attached to the writ application is of very poor quality, with the ends of sentences and bottoms of pages being cut off. It is, however, an eighteen page document that states that it is an agreement that arose from negotiations between the signatories, which regulates the terms and conditions of employment of Honduran seamen engaged in service on Greek Flag vessels for twenty-four months beginning on July 1, 1992, remaining in force until amended by a fresh agreement.
The relevant portions of the MOA for the purposes of this writ are § 29, which relates to medical benefits, provides a schedule of benefits for death and disability, and provides that disputes between the company and seaman or his beneficiaries (in the event of his death) as to eligibility to or amount of compensation shall be determined by binding arbitration in Honduras; and § 42, which provides that sole and exclusive jurisdiction of disputes between the employer and the seaman regarding the application and/or interpretation of the agreement is in the Jurgado de Letras Sectional De Trabajo in San Pedro Sula, Honduras, which shall decide the dispute in terms of Honduran law.
*956 Based solely on these provisions of this MOA the defendant, a Greek shipping agent, acting for a Liberian company, which owned a Greek flag vessel, on which a Honduran seaman was injured while the vessel was in the Gulf of Mexico close to the mouth of the Mississippi River en route to New Orleans, would have this court send this seriously injured seaman (who received emergency medical treatment in New Orleans, and who requires and desires further medical treatment) to Honduras and relegate him to very limited recovery, and no assurances of additional medical treatment.
But for the provisions of the MOA there is no question that Louisiana would have jurisdiction over this claim. The sole basis for defendant's argument that this action must be dismissed is the "forum selection" clause of the MOA. Before this clause is enforced to bar Mr. Madrid litigating his claim here it is necessary to determine if the MOA is enforceable. In order to make that determination we must first decide what law will apply.

I. WHAT LAW SHOULD BE APPLIED TO DETERMINE IF THIS CONTRACT, WHICH INCORPORATES THE MOA BY REFERENCE, IS VALID?
The trial court refused to apply Honduran law finding that there was a genuine issue of material fact as to whether the remedy that the seaman would have under the MOA (which defendant argues is the law that should govern this claim) is so poor as to constitute no remedy.
We review the trial court's decision in light of the relevant Supreme Court cases on this issue.
Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) was the first Supreme Court case to address the issue of what law governs the liability of foreign shipowners vis a vis foreign seaman asserting claims in American courts.
The key issue in Lauritzen, as stated by the Court, was whether the statutes (Jones Act) of the U.S. should be applied to a claim of maritime tort brought by a Danish seaman against a Danish owner of a Danish vessel who was injured in Havana harbor. The seaman had signed ship's articles written in Danish (his native tongue) that provided that the rights of crewmembers were governed by Danish law and by the employer's contract with the Danish Seamen's Union.
The shipowner, whose position was supported by the Danish Government, asserted that the Danish law supplied the full measure of the shipowners obligation and that maritime usage and international law as accepted by the United States excluded the application of the Jones Act (an incompatible statute.) The plaintiff conceded that Danish law applied to his claim, but argued that the Jones Act provided an optional cumulative remedy.
The Court opined that the Jones Act, if read literally, would confer an American right of action on any seaman who suffered personal injury in the course of his employment without any requirement that the seaman, the employment or the injury have the slightest connection with the U.S. It noted, however, that the Jones Act, with its broad language, was not written on a clean slate, but as a postscript to a long series of enactments governing shipping, all enacted with regard to a seasoned body of maritime law developed by the experience of American courts. Id. at 925. "By usage as old as the Nation, such statutes have been construed to apply only to areas and transactions in which American law would be considered operative under prevalent doctrines of international law," because an "Act of Congress ought never to be construed to violate the law of nations if any other possible construction remains." Id. at 926.
The Court found that international or maritime law has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved. Id. at 928.
It is within this context that the Court articulated the factors that, alone or in combination, are generally conceded to influence choice of law to govern a tort claim, particularly a maritime tort claim. In Lauritzen *957 the Court found that the factors preponderated in favor of the applying Danish law.
Hellenic Lines Limited v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) was the Supreme Court's next pronouncement with regard to determining the law to be applied to claims filed in U.S. courts by foreign seaman.
This case involved a suit by a Greek seaman against the Greek owner of a Greek flag vessel for injuries suffered while in a U.S. port. The Greek corporation that owned the ship maintained its largest office in New York and 95% of its stock was owned by a Greek citizen who was a U.S. domiciliary. The contract, signed by the seaman in Greece, provided that Greek law and a Greek collective-bargaining agreement would apply between the employer and the seaman, and that all claims arising under the contract would be adjudicated in a Greek court. The defendant shipowner argued that four of the seven Lauritzen factors favored his position that there was no claim for this seaman under the Jones Act.
The Court used Rhoditis as an opportunity to refine the Lauritzen test. Pointing out that the Lauritzen test is not a mechanical one, it stated that the significance of one or more of the factors must be considered in light of the national interest served by the Jones Act.
The Court went on to point out that the seven factors listed in Lauritzen were not intended to be exclusive, noting that the shipowner's base of operation was another factor of importance that was not included in the list. It stated expressly that there could be other factors not considered in Lauritzen that should be considered.
It distinguished Rhoditis from Lauritzen on the basis of the extent of the contacts of the parties and the litigation to the United States, and emphasized that the ship (Hellenic Hero) was not a casual visitor but it and its sister ships earned income from cargo originating or terminating here. The Court saw "no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operating in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act `employer.'" Id. 398 U.S. at 310, 90 S.Ct. at 1734. All of the connections of the seaman, the vessel and the owner to Greece were viewed as "minor weights in the scales compared with the substantial and continuing contacts that this alien owner has with this country." Id. at 310, 90 S.Ct. at 1734.
The next two Supreme Court cases argued by the defendant in this case are M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). While these cases are factually distinguishable (neither deals with shipping articles or employment contracts that specify a particular country's law as governing claims between a seaman and his employer) they offer some guidance in our consideration of this writ application.
Bremen, a case involving a contract of towage between a rig owner and a tug owner for damages to a rig while it was being towed to Italy, tells us that, in general, forum selection clauses will be enforced unless to do so is unreasonable.
In Carnival the Supreme Court addressed, for the first time, the question of when a forum-selection clause was unreasonable in light of The Bremen decision. The issue primarily considered by the Court was the validity of a forum selection clause contained in cruise ship passengers' tickets of passage.
In holding that the forum selection clause in the ticket was enforceable the Court emphasized that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness. Finding that there was no indication that the forum selected by the cruise line was based on a bad faith motive, that there was no evidence of fraud or overreaching, and that plaintiffs were given notice of the provision and retained the option to reject the contract with impunity, the Court found that the forum-selection clause should be enforced. Id. 499 U.S. at 594, 111 S.Ct. at 1528.
*958 In the case at bar we find that:
There is no showing that the Jones Act or general maritime law is in conflict with Honduran law. The MOA, upon which defendant relies, does not purport to be consistent with or based upon Honduran law. What it attempts to do is to create a "body of law" applicable to Honduran seamen's rights vis a vis Greek shipowners as to claims for medical benefits, disability and death as a result of illness or injury during the seaman's engagement.
The MOA does not guarantee any medical benefits to this seriously injured seaman beyond what he has already received. The agreement regarding medical benefits is clear and unambiguous:

29) MEDICAL BENEFITS

a) A seaman discharged ill or injured at any port including his port of engagement after the date of original e[mploy]ment SHALL BE PAID WAGES, UNTIL DECLARED FIT, UP TO A MAXIMUM PERIOD OF 16 (SIXTEEN) WEEKS commencing from the day following date up to which wages are paid, provided that such a seaman di[scha]rged ill is under competent Medical Supervision throughout his treatment. (emphasis added)[1]
The only medical benefits provided for under the agreement that the defendant wants us to enforce are a maximum of sixteen weeks of wages.
Neither Lauritzen nor Rhoditis mandates the application of Honduran law to this claim since the factors considered there are not exclusive, and the significance to be given each factor is case specific. Applying the rationale of The Bremen and Carnival in the context of this writ application supports the district court's decision based on his factual determination that to enforce the provisions of the MOA would be fundamentally unfair.

II. IF HONDURAN LAW DOES APPLY TO THIS CLAIM, IS THE MOA, WHICH IS INCORPORATED BY REFERENCE IN THE IWC, VALID SO THAT THE FORUM-SELECTION CLAUSE SHOULD BE ENFORCED AND PLAINTIFF'S CLAIM DISMISSED?
Even if Honduran law applies to this claim one cannot determine that the IWC/MOA is enforceable against this seaman without evidence of Honduran contract law. One cannot assume that simply because the MOA was negotiated by a Honduran union that it is enforceable under Honduran law. There is absolutely no evidence in this record as to what a Honduran court would do if asked to enforce this contract. We do not know if the Honduran law of contracts recognizes vices of consent as does Louisiana law. Nor do we know if, under Honduran law, this would be a contract of adhesion, and, as such, unenforceable against the seaman. The fact that Honduras is a civilian jurisdiction suggests that its law may be similar to Louisiana law in this regard.
By reversing the trial court's denial of summary judgment we would dispose of this very serious claim by summary application of a country's law, the content of which is yet to be established. Summary judgment should be reserved for those situations where the law is clear and the material facts undisputed.
Contrary to Relator's assertions, Barcelona v. Sea Victory, Maritime, Inc., 619 So.2d 741 (La.App. 4th Cir.), writ denied, 626 So.2d 1179 (La.1993) and Prado v. Sloman Neptun Schiffahrts, 611 So.2d 691 (La.App. 4th Cir. 1992), writ not considered, 613 So.2d 986 (La. 1993) are not dispositive of this writ. The cases are factually distinguishable as each dealt with contracts specifying the application of Philippine not Honduran law. Furthermore, since one of the contracting parties was the Philippine government, there was some reason for the court to assume that the *959 contract would have been enforceable under the law of that country.
Although the Barcelona court opined that the contract at issue therein would be enforceable even if Louisiana law were applied to it, that portion of the opinion is dicta. Furthermore, the reasons for the court's opinion are not present with regard to the agreement at issue in this case. The MOA is not attached to the IWC signed by Mr. Madrid. The provisions of the MOA that the defendant seeks to enforce are referred to in the IWC, which was written in English. Mr. Madrid testified that he neither reads nor speaks English, and that no one explained the agreement to him. The MOA limits the liability of the shipowner which is precluded under La.Civ.Code art. 2004. In light of the unequal bargaining power between the seaman and the employer the MOA may be a contract of adhesion, particularly in light of the fact that seaman are wards of the court, in need of and entitled to special protection.
The trial court refused to enforce the MOA by summary judgment. Since there are genuine issues of material fact as well as a significant legal question that are unresolved that decision was correct.
WRIT DENIED.
LANDRIEU, J., dissents.
LANDRIEU, Judge, dissenting.
The plaintiff, a Honduran seaman, entered into an individual employment contract in Honduras at the office of the Honduran Seamen's Union before joining the crew of the Greek vessel M/V LIA. That contract, the result of a collective bargaining agreement between the Union of Greek Shipowners and the Honduran Seamen's Union, includes two clauses which provide that, in the case of injury, (1) questions pertaining to eligibility for compensation and/or the amount of such compensation will be settled by an arbitrator in Honduras and acceptable to both parties and (2) disputes regarding the interpretation and/or application of the terms of the agreement or individual contract shall be referred "only to the Jurgado de Letras Sectional de Trabajo, San Pedro Sula for decision in terms of the laws of Honduras which shall have sole and exclusive jurisdiction to the exclusion of all other jurisdictions."
Unless enforcement of a forum selection clause is unreasonable or violates the plaintiff's right to fundamental fairness, such clauses are prima facie valid. M/S Bremen v. Zapata, 407 U.S. 1, 9, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972).[1] In his opposition to the relator's motion for summary judgment on the issue of the contractual forum selection clause, Madrid failed to meet his burden of proving that the forum selection clause was an unreasonable condition of employment or fundamentally unfair. His contention that the enforcement of the clause would be detrimental to him because he would not receive sufficient medical care and/or benefits in Honduras is inadequate. He offered no evidence to support this contention. Furthermore, the fact that the United States has a higher standard of medical care and benefits than Honduras does not make the forum selection clause fundamentally unfair. Madrid signed the agreement at his local union office where, one would assume, assistance was available in understanding the terms of the agreement. He could have simply chosen not to sign the contract if he did not agree with the forum selection clause. See Barcelona v. Sea Victory Maritime, Inc., 619 So.2d 741 (La.App. 4th Cir.1993), writ denied, 626 So.2d 1179 (La.1993). In any event, U.S. law (specifically the Jones Act) is not applicable in this case. Madrid, a domiciliary of Honduras, was injured in the Gulf of Mexico outside of the territorial waters of the U.S. on a Greek vessel owned by a Liberian corporation and was employed under a contract executed in Honduras in which the shipowner and its agent agreed to Honduran law. See Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).
Accordingly, I would find the employment contract binding and enforceable (including *960 the forum selection and choice of law provisions) and order that the proceedings be stayed for six months to allow Madrid time to file his claim in Honduras. If, during that period, Madrid fails to provide the trial court with proof that his claim has been filed in Honduras, the action should be dismissed for failure to comply with the forum selection provisions of the employment contract. See Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691 (La.App. 4th Cir.1992), writ not considered, 613 So.2d 986 (La.1993).
NOTES
[1] The defendant argues that Polembros will provide necessary medical treatment, and point to a letter from its assistant manager and the president of the Honduran seamens union as establishing that the union is responsible for and supervises the seaman's full and adequate medical treatment while he is in Honduras until he is declared fit, the cost of which is reimbursed by Polembros. However, that is not what the MOA, the agreement we are being asked to enforce, provides with regard to medical benefits.
[1] See also Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (the party challenging a forum selection provision bears a heavy burden to prove that enforcement of the provision would be unreasonable or that the clause violated fundamental fairness due to fraud or overreaching).