705 So.2d 158 (1997)
Feliciano LEJANO and Melinda Lejano
v.
K.S. BANDAK, et al.
No. 97-CC-0388.
Supreme Court of Louisiana.
December 12, 1997.
Rehearing Denied March 27, 1998.
Dissenting Opinion on Denial of Rehearing March 27, 1998.
*160 Richard J. Dodson, David C. Vidrine, Baton Rouge, John J. Molaison, Jr., Walter J. LeBlanc, Jr., Gretna, Arthur D. Dupre, Jr., Metairie, A.N. Yiannopoulos, New Orleans, Symeon C. Symeonidas, for Applicant.
David B. Lawton, Kevin J. LaVie, New Orleans, for Respondent.
JOHNSON, Justice.
We granted certiorari in this maritime tort case to determine the enforceability and validity of a forum selection provision of an employment contract between a Filipino seaman, and a Norwegian shipowner and employer. The cause of action arose in Florida, but a forum selection provision in the employment contract states that the claim may be brought in either the Philippines or Norway. Finding that the forum selection clause is enforceable, the trial court granted defendants' motion for partial summary judgment and ordered plaintiffs to file their claim in either the Philippines or Norway. The court of appeal affirmed the trial court's grant of defendants' motion for partial summary judgment and denied plaintiffs' writ application.

FACTS AND PROCEDURAL HISTORY
On November 7, 1991, plaintiff, Feliciano Lejano, a Filipino seaman, was working aboard the M/V BANDAK in the straits of Florida after sailing from Mobile, Alabama. Mr. Lejano was working on a suspended scaffold when a rope broke which had been holding the scaffold, resulting in his falling approximately thirty feet to the deck below. The parties agree that the accident occurred during the course and scope of Mr. Lejano's employment with defendant, K.S. Bandak, a Norwegian limited partnership owned by Borgestad, Inc., a Norwegian company. At the time of the accident, the M/V BANDAK was located in international waters, and was owned and operated by defendant, K.S. Bandak. Mr. Lejano suffered severe injuries as a result of the accident, including quadriplegia and brain damage. Mr. Lejano was hospitalized for a few months in a hospital in Miami, Florida. He was subsequently transferred to a hospital in the Republic of the Philippines in February, 1992, where he was hospitalized for an additional 10 months.
Seeking recovery under the Jones Act, General Maritime Law, and Federal Maritime Law, plaintiffs filed suit against K.S. Bandak and its foreign insurers, Assuranceforeningen Gard and Gard (U.K.), Ltd. in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana on September 16, 1993. Plaintiffs obtained quasi-in-rem jurisdiction by way of a non-resident writ of attachment on the M/V BANDAK in September, 1993, which was docked within the jurisdiction of the Twenty-Fourth Judicial District Court. Plaintiffs later filed an amended petition, naming as an additional defendant, K.S. Bandak II, the owner of the vessel at the time it was attached.[1] Plaintiffs subsequently filed yet another amended petition naming AS Borgestad and AS Borgestad Shipping as defendants.[2]
*161 After the attachment, defendants posted security for Mr. Lejano's claims in the amount of $8,750,000 and the vessel was released. Defendants then filed several declinatory exceptions[3] and a request for a dismissal based on forum non conveniens. Defendants argued that under the forum selection clause in Mr. Lejano's employment contract, he has no cause of action and no right of action. After a hearing on August 3, 1994, the trial court rendered judgment overruling defendants' declinatory exceptions. However, the trial court maintained defendants' peremptory exceptions of no cause of action and no right of action, dismissing plaintiffs' demands with prejudice. In its Reasons for Judgment, the trial court reasoned that there were no sufficient contacts with the United States to warrant application of its laws to this case. The trial court further reasoned that Mr. Lejano's employment contract, the revised standard employment contract, and the collective bargaining agreement applicable to the employment relationship require that disputes be resolved in Norway or the Philippines. Additionally, the trial court ruled that the doctrine of forum non conveniens is applicable to this case, stating that plaintiffs' suit was dismissed on this basis.
The court of appeal reversed the trial court judgment and remanded the case to the trial court on March 1, 1995. The court of appeal reasoned that because plaintiffs' petition states claims under the Jones Act and General Maritime Law, that plaintiffs are afforded a remedy in law, and that plaintiffs are the people in whose favor the law extends the remedy, plaintiffs therefore have a right of action. The court of appeal further reasoned that pursuant to La. C.C.P. art. 123(C), the doctrine of forum non conveniens is inapplicable to this Jones Act case.
On remand, defendants moved for a partial summary judgment on the issue of choice-of-law, urging the application of Norwegian substantive law. Plaintiffs argued that the substantive provisions of Philippine law should be applied. On September 21, 1995, the trial court found that the forum selection clause in Mr. Lejano's contract was valid and that the case was governed by either Norwegian or Philippine law. Accordingly, the trial court ordered Mr. Lejano to file his claim in either Norway or the Philippines, indicating that should defendants attempt to frustrate his efforts to pursue the case in a foreign forum, it would proceed to adjudicate the claim applying Philippine or Norwegian law.
Plaintiffs filed a motion for new trial. In their motion for new trial, plaintiffs contended that the trial court was in error and bound by the "law of the case" by virtue of the court of appeal's previous opinion. Plaintiffs further argued that Mr. Lejano's cause of action had prescribed in both Norway and the Philippines, and that therefore, the only viable forum in the entire world was the Twenty-Fourth Judicial District Court, where plaintiffs' action was pending. The trial court denied plaintiffs' motion for new trial on November 16, 1995. Plaintiffs sought appellate review of this ruling. After a different panel of the court of appeal denied plaintiffs' writ application on January 9, 1996, plaintiffs filed a writ application with this court. This court granted the writ and remanded the case to the court of appeal for briefing and the rendering of an opinion. On January 15, 1997, the court of appeal affirmed the decision of the trial court. Lejano v. Bandak, 95-1011 (La.App. 5 Cir. 1/15/97), 688 So.2d 86. Plaintiffs filed writs with this court, arguing that the court of appeal erred in affirming the trial court's dismissal of their action on the basis of the forum selection clause, and that by doing so, the court of appeal violated state and federal jurisprudence, the open access clause of Article I, Section 22 of the Louisiana Constitution, and the policy embodied in La. C.C.P. art. 123(C). In their writ application to this court, plaintiffs allege that the court of appeal erred in the following respects:
1. Enforcing a choice of forum clause in favor of a party who was not a signatory to the clause;
2. Enforcing a clause against a party who was not in a position to negotiate the clause and who could not read the *162 language in which the clause was written;
3. Arbitrarily extending the scope of the clause to delictual disputes in blatant disregard of the specific wording of the clause which clearly confined the scope of the clause to purely contractual disputes; and
4. Treating as being mandatory a clause that was clearly intended to be merely permissive.

BACKGROUND

A. Maritime Jurisdiction, Generally
Three provisions of the United States Constitution govern maritime law jurisdiction: (1) Article III, section 2 extends the judicial power of the United States to "all cases of admiralty and maritime jurisdiction"; (2) Article I, section 8 gives Congress the power to "make all laws which shall be necessary and proper for carrying into execution ... all ... powers vested by this constitution in the government of the United States, or in any department or officer thereof"; (3) the Supremacy Clause (Article VI, clause 2) makes that body of federal law binding on the states. David W. Robertson, Admiralty and Maritime Litigation in State Court, 55 La. L.Rev. 685, 687-688 (1995). The United States Supreme Court has held that the first two constitutional provisions above empower the federal courts and Congress to create and interpret a nationally uniform maritime law. Robertson, supra notes 8 and 9, at 687-688.
Article III of the United States Constitution, from the Constitutional Convention of 1787, marked a significant centralization of admiralty authority from Colonial days and from the period of the Articles of Confederation during which maritime claims were adjudicated in the admiralty courts of each colony/state. See generally, Putnam, How the Federal Courts Were Given Their Admiralty Jurisdiction, 10 Cornell L.Q. 460 (1925). While Article III extended the judicial power of the United States to all admiralty and maritime cases, it did not create the lower federal courts or vest them with jurisdiction.
In 1789, the First Congress took the essential first step by creating federal district courts and giving them admiralty jurisdiction. Robertson, supra note 13, at 688.[4] By this statute, "the entire admiralty power of the Constitution was lodged in the Federal Courts." The Belfast, 74 U.S. (7 Wall.) 624, 638, 19 L.Ed. 266 (1869). The statutory grant of admiralty jurisdiction to the federal districts courts, in its present version, is codified as 28 U.S.C. § 1333, and provides in pertinent part:
"The district courts ... shall ... have original jurisdiction, exclusive of the courts of the states of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Robertson, supra at 688.
There is admiralty jurisdiction in tort as well as contract cases. Perhaps the most important body of tort cases falling within the admiralty jurisdiction are those involving injuries to seamen. Robertson, supra note 32, at 691.
28 U.S.C. § 1333 has been interpreted as making federal court admiralty jurisdiction exclusive as to actions in rem[5] against vessels or against other maritime property. Robertson, supra note 81, at 698. Most admiralty cases, however, are cases of concurrent jurisdiction rather than exclusive jurisdiction. Robertson, supra at 699. The plaintiff may bring the case in federal court on the basis of admiralty jurisdiction, or the *163 plaintiff may take advantage of the "saving to suitors" clause, which has been interpreted as giving the plaintiff in most types of admiralty or maritime cases the option of bringing the suit in state court. Robertson, supra note 86, at 699. The "saving to suitors" clause allows state courts to entertain in personam maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-Erie" doctrine, which requires that the substantive remedies afforded by the states conform to governing federal maritime standards. Offshore Logistics, Inc., et al. v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); Robertson, supra note 91, at 700. When a maritime plaintiff takes advantage of the "saving to suitors" clause to bring his case in state court, as a matter of general principle the state court is obligated by the Constitution's Supremacy Clause to follow the applicable substantive federal maritime law. Robertson, supra note 87, at 699. On matters of procedure, however, the state court is generally free to follow the state's own rules. Robertson, supra note 88, at 699. The Supremacy Clause restraint on the state courts is often called the "reverse-Erie" doctrine. Supra. During the past several years, the number of admiralty or maritime cases brought in state courts has increased. Robertson, supra note 1, at 686.

B. In Rem and Quasi In Rem Jurisdiction
Plaintiffs with claims based on admiralty or maritime law sometimes encounter a problem when attempting to effect service of process on the prospective or intended defendant. In the maritime context, the shipowner, often in a foreign land, was usually not subject to the court's jurisdiction. Geoffrey A. Hoffman, The Sudden Demise of the "No Res, No Case" Rule in Rule B Maritime Attachment Proceedings: Stevedoring Services of America v. Ancora Transport, 20 Tul. Mar. L.R. note 15 at, 175, 176 (1995). "Quasi in rem" jurisdiction rectifies this scenario. Pursuant to quasi in rem, if a defendant cannot be served within the territory, the court derives its authority to adjudicate personal claims against the defendant through attachment of defendant's property located in the territory. Hoffman, supra note 23, at 176. Moreover, attachment of property to obtain quasi in rem jurisdiction is used to obtain personal jurisdiction of the defendant, and may be unrelated to the underlying maritime claim. Hoffman, supra note 47, at 178.
In Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), the United States Supreme Court first articulated the "territorial" principal underlying quasi in rem jurisdiction and stated that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory." Hoffman, supra note 21, at 176. Quasi in rem jurisdiction is to be distinguished from in rem jurisdiction. In rem jurisdiction allows plaintiffs who are injured by a ship to seek redress directly against the ship. See Hoffman, supra note 16, at 176. Comparatively, with quasi in rem jurisdiction, recovery is limited to the value of the seized property, unless the defendant is personally served with process. Hoffman, supra note 29, at 177.
The development of land-based quasi in rem jurisdiction can be traced back to our nation's beginnings, to a time when it was extremely difficult to locate defendants and to prosecute claims in distant forums. Kalo, supra notes 47-48, at 32. During those early times, even when personal jurisdiction could be acquired, judgments rendered in one colony were not readily enforced in another. Kalo, supra note 49, at 32. In that historical setting, one practical solution to the difficulties facing a plaintiff was to allow him to seize property of the defendant located within the forum. Kalo, supra at 33. The seized property provided the basis for a limited form of jurisdiction over the defendantquasi in remand furnished a source from which any judgment could be satisfied. Kalo, supra note 50, at 33. This form of jurisdiction continued to be necessary after the Constitution was adopted and the nation came into existence. Kalo, supra at 33. The strict notions of territoriality that existed throughout the nineteenth century, coupled with problems related to communication and transportation, continued to make it difficult for many plaintiffs with valid claims *164 to acquire personal jurisdiction over defendants. Kalo, supra note 53, at 33.
Admiralty, however, still has a legitimate need for limited forms of jurisdiction such as in rem and quasi in rem. The admiralty court's primary concern is maritime commerce, which is conducted on both a national and international scale. Those involved in maritime activities are often thinly financed, on narrow margins, highly mobile, and potentially difficult and expensive to locate. Moreover, even if personal jurisdiction can be asserted, when the defendant is a foreign national the judgment may not be enforceable at the place where the defendant's assets are located. Thus, in cases involving foreign parties, an inability to assert in rem and quasi in rem jurisdiction may mean the effective loss of the claim. Furthermore, regarding in rem actions, if the vessel is not seized as soon as possible, the lien claimant's priority may be lost by the creation of a subsequent maritime lien as the vessel moves from port to port. Permitting the quasi in rem action also provides additional assurance to local suppliers and others providing services on credit to transient vessels that they may be able to enforce their claims locally. Such assurances can only operate to the overall benefit of maritime commerce. While it is true that not all of these considerations apply to domestic maritime commerce or our own citizens, the need for such jurisdictional bases when dealing with foreign nationals is not diminished. Kalo, supra at 34-35.

C. Forum Selection Clauses
Consensual adjudicatory procedure denotes the ability of potential or prospective litigants to choose, in advance of any litigation, the court that will hear the dispute and the law that will govern the substantive merits of the litigation. Linda S. Mullenix, Another Choice of Forum, Another Choice of Law: Consensual Adjudicatory Procedure in Federal Court, 57 Fordham L.Rev. 291, 296, note 10 (1988). It is essentially a doctrine of procedural choices by consent of the parties. These choices and this consent are typically manifested in "forum-selection clauses" and "choice-of-law" clauses contained in an agreement between the parties. Mullenix, supra note 11, at 296. Although these agreements affect basic procedural rights, their interpretation is nonetheless inevitably based in contract law.
Sometimes, the issues surrounding a forum selection clause are further complicated by the presence of an accompanying choice-of-law provision. However, when confronted with a combined forum selection clause and choice-of-law provision, most courts construe the forum selection clause without reference to the choice-of-law provision. Mullenix, supra note 294, at 347. The construction of forum selection clauses by a non-selected forum implicates full faith and credit issues, including subsequent collateral attack. Mullenix, supra note 337, at 354. It follows from the established characterization of the choice-of-law issue as federal substantive law that the validity and interpretation of choice-of-law clauses in maritime contracts is also a matter of federal law. Robertson, supra note 261, at 729. On the other hand, the validity and interpretation of forum selection clauses may well be regarded as a procedural matter that is entirely controlled by state law. Robertson, supra note 262, at 729. The distinction between the two types of clauses has a useful analogy in the jurisprudence holding that while parties to a dispute generally cannot confer or withhold judicial jurisdiction by contract or stipulation, they can choose the substantive law that governs their dispute. Robertson, supra note 264, at 730.
There are conflicting decisions by courts in this state as to whether or not a case can be conditionally dismissed by virtue of a forum selection clause in a seaman's contract of employment. The Fourth Circuit Court of Appeal allowed dismissal in Barcelona v. Sea Victory Maritime, Inc.[6] and Prado v. Sloman Neptun Schiffahrts, A.G.[7] as did the Fifth Circuit Court of Appeal in the instant case. See Lejano v. Bandak, 688 So.2d at 86. However, the Fifth Circuit subsequently refused to enforce a forum selection clause in a *165 seaman's contract in Madrid v. Polembros Maritime Co., Ltd., 95-0545 (La.App. 5 Cir. 1995), 660 So.2d 955.

LAW AND ANALYSIS
Plaintiffs argue that the dismissal or transfer of their case from the Twenty-Fourth Judicial District Court to either the Philippines or Norway on the basis of the forum selection clause is, in fact, a disguised dismissal on the basis of forum non conveniens, which was expressly prohibited by this court in Miller v. American Dredging, 595 So.2d 615 (La.1992), aff'd 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). Forum non conveniens is a doctrine by which a court "may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Miller, 595 So.2d at 616. Louisiana courts may not dismiss cases for forum non conveniens except as provided in La. C.C.P. art. 123. Miller v. American Dredging, 595 So.2d at 617. In Louisiana, the doctrine of forum non conveniens is specifically made unavailable in a Jones Act or maritime law case. La. C.C.P. art. 123; Miller, 595 So.2d at 617. A clear reading of article 123(C) supports this conclusion. La. C.C.P. art. 123(C) provides:
"The provisions of Paragraph B shall not apply to claims brought pursuant to 46 U.S.C. § 688 or federal maritime law." La. C.C.P. art. 123(C).

Louisiana courts have refused to apply forum non conveniens to maritime or admiralty cases irrespective of the fact that the common law doctrine has been recognized in federal admiralty law since at least 1801. See Miller, 595 So.2d at 616. Because Louisiana has no doctrine of forum non conveniens in maritime cases, a maritime action may be maintained as long as venue is proper and jurisdiction is obtained over the defendant, either in personam or by quasi in rem attachment of its property. Russell v. CSX Transportation, 96-2151, 96-2362 (La.2/25/97), 689 So.2d 1354. The "saving to suitors" clause allows litigants to bring in personam maritime actions in state courts. Offshore Logistics v. Tallentire, 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986). A suit to recover damages under the Jones Act is in personam against the ship's owner and not in rem against the ship itself. Lauritzen v. Larsen, 345 U.S. 571, 574, 73 S.Ct. 921, 924, 97 L.Ed. 1254 (1953).
In the instant case, the Twenty-Fourth Judicial District Court obtained quasi in rem jurisdiction over the defendants through the non-resident writ of attachment of the M/V BANDAK. It is well-settled that a state court, having concurrent jurisdiction with the federal courts as to in personam admiralty claims, is free to adopt such remedies, and to attach to them such incidents as it sees fit so long as it does not attempt to make changes in the substantive maritime law. Miller, 595 So.2d at 617, citing Offshore Logistics, 477 U.S. at 207, 106 S.Ct. at 2486; Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582 (1924). That proviso is violated when the state remedy "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917). The United States Supreme Court held that the doctrine of forum non conveniens is neither a "characteristic feature" of admiralty nor a doctrine whose uniform application is necessary to maintain the "proper harmony" of maritime law. American Dredging, 510 U.S. at 447, 114 S.Ct. at 985. Thus, it is within the authority of Louisiana courts to decline application of forum non conveniens to maritime cases. Prior to addressing plaintiffs' argument that the transfer of the case is a disguised dismissal on the basis of forum non conveniens, the court must determine whether the forum selection clause is valid and whether the lower courts correctly ruled to enforce the provisions thereof. If the forum selection clause is valid and enforceable, a transfer to either the Philippine or Norway cannot be found to be a disguised transfer on the basis of forum non conveniens.
Although the instant case is within the federal admiralty jurisdiction, it is brought in state court pursuant to the "saving to suitors" *166 clause. Consequently, the state court has concurrent jurisdiction and is "free to adopt such remedies and to attach them to such incidents as it sees fit so long as it does not attempt to make changes in substantive maritime law." Offshore Logistics, 477 U.S. at 221, 106 S.Ct. at 2494. As earlier stated, generally, state courts are free to follow the state's own procedural rules. Robertson, supra note 87, at 699. Generally, questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive in nature. Jones v. Weibrecht, 901 F.2d 17, 19 (2nd Cir.1990), citing Stewart, 487 U.S. at 32, 108 S.Ct. at 2245; Manetti-Farrow, Inc., v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir.1988). Because the validity and interpretation of forum selection clauses are regarded as procedural, they are generally controlled by state law. See Robertson supra note 262, at 729. However, the United States Supreme Court has determined that in admiralty cases, federal law governs the enforceability of forum selection clauses.[8]Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).
Although Mr. Lejano's underlying claims are based on tort law under the Jones Act and federal maritime law, the contested forum selection clause is contained in his employment contract. A contract for hire of a ship or of the officers and sailors to man her falls within admiralty jurisdiction. Kossick v. United Fruit Co. 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Mr. Lejano's employment contract with K.S. Bandak to work aboard the M/V BANDAK falls within admiralty jurisdiction. Because the employment contract falls within admiralty jurisdiction, the Supremacy Clause mandates that the body of law governing maritime law is binding on the states. See Const. Art. VI, clause 2.
Generally, where maritime contracts are involved, the federal interest is at its "zenith" while in maritime tort cases, the interest in uniformity is minimal because of the fortuitous nature of accidental injuries and the strong interest in providing redress for injuries. Green v. Industrial Helicopters, Inc., 593 So.2d 634 (La.1992), citing Rodrigue v. Legros, 563 So.2d 248 (La.1990). Therefore, we find that the courts of this state sitting in admiralty should examine the validity and enforceability of forum selection clauses in accordance with federal law and standards.
Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). See also, Mullenix, supra note 50, at 307. A forum selection clause should control absent a strong showing that it should be set aside. The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916. A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916.
In The Bremen, the United States Supreme Court examined the enforceability of a forum selection clause in a contract entered into by two business corporations: Zapata, an American corporation, and Unterweser, a German corporation. The contract provided that Unterweser was to tow Zapata's ocean-going drilling rig from Louisiana to a point off Ravenna, Italy, in the Adriatic Sea. The contract contained a forum selection clause, which provided that any dispute arising under the contract was to be resolved in the London Court of Justice. After a severe storm damaged the rig in the middle of the Gulf of Mexico, Zapata instructed the Bremen to tow its damaged rig to Tampa, Florida, the nearest port of refuge. Thereafter, Zapata sued Unterweser in admiralty in federal court in Tampa. Unterweser moved to dismiss on the basis of the forum selection clause. The District Court denied Unterweser's motion, and the Court of Appeals affirmed. *167 Finding that a freely-negotiated private international agreement unaffected by fraud, undue influence, or overweening bargaining power should be given full effect, the United States Supreme Court vacated and remanded. The Bremen, 407 U.S. at 13, 92 S.Ct. at 1915. The Court spoke favorably of, and upheld the forum selection clause, despite its recognition that historically, forum selection clauses were generally disfavored. The Bremen, 407 U.S. at 9, 92 S.Ct. at 1912-13. Moreover, in The Bremen, the Court considered that "in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916. Hence, according to The Bremen, a forum selection clause should be enforced absent a clear showing that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916.
The forum selection clause in the present case is contained in a collective bargaining agreement between the union and the seaman. The parties to the collective bargaining agreement are The Associated Marine Officers' and Seaman's Union of the Philippines ("AMOSUP") and The Norwegian Shipping and Offshore Federation ("ASO"). The collective bargaining agreement provides that "this agreement shall be binding with regard to Filipino seafarers serving on board a vessel where these terms have been applied...." The collective bargaining agreement further states in part:
"This agreement is an agreement for Filipino seafarers serving on vessels registered in the Norwegian International Ship Register...."
The collective bargaining agreement provides that suit may be brought in either Norway or the Philippines. Article 15 of the agreement provides:
"Jurisdiction
The Unions and the ASO have observed that according to the NIS ACT this agreement should be subjected to Norwegian law and the jurisdiction of the courts in Norway.
Cases concerning the seafarer's service on the ship may be brought against the Company before a Norwegian Court or before a Court in the seafarer's country of residence."[9]
The evidence reveals that Mr. Lejano is a member of the collective bargaining unit represented by AMOSUP, while defendant/shipowner is a member of the collective bargaining unit represented by ASO. The forum selection clause is the result of negotiations between the Philippine Seamen's union and the Norwegian government.
The forum selection provision of the employment contract between Mr. Lejano and defendant repeats the language of the forum selection provision in the collective bargaining agreement. The employment contract also specifically states that a claim arising from the contract is to be brought in either Norway or the Philippines, subject to application of Norwegian's law. The "Contract of Employment" provides in pertinent:
"This agreement is subject to Norwegian law and Jurisdiction. Dispute with shipping company in connection with the employees service on board the ship may be brought either before a Norwegian court or a court in the country of the seaman's domicile."
Mr. Lejano signed the employment contract on the same page where the forum selection clause is contained. Mr. Lejano maintains however, that the employment contract is written in English, a language he does not understandnot in his native language, Tagalog. Mr. Lejano contends that for this reason, he had no power to negotiate any of the terms of the agreement and that the clause should be invalid.
The employment contract was approved by the Philippine Overseas Employment Administration (hereinafter, "POEA") and signed in the Philippines. The POEA is a Philippine government agency charged with overseeing the employment of Filipinos, including seamen, by foreign entities. Barcelona v. Sea *168 Victory Maritime, Inc., 619 So.2d 741, 744 n. 2 (La.App. 4th Cir.1993), writ denied, 626 So.2d 1179 (La.1993). The Philippine government established the POEA to promote and develop overseas employment opportunities and to afford protection to Philippine workers and their families. Prado, 611 So.2d at 702, citing Cruz v. Chesapeake Shipping, Inc., 932 F.2d 218, 221 (3rd Cir.1991). "The POEA has promulgated extensive rules and regulations controlling overseas employment to accomplish these objectives. It registers seamen seeking jobs, prescribes standard employment contracts for them, approves their wages, and requires that 80% of their earnings be sent home. The POEA regulates advertisement and placement, contract processing and travel documentation, the filing of grievances, and provides worker assistance and Welfare services." Prado, 611 So.2d at 702. Under Philippine law, no foreign employer may hire Philippine workers for overseas employment except through the POEA. Prado, 611 So.2d at 702.
The employment contract in the instant case was not only bargained for and approved by the POEA, but it was in the standard form prepared and used by the POEA. The employment contract heading reads:
"Department of Labor and Employment
PHILIPPINE OVERSEAS EMPLOYMENT ADMINISTRATION CONTRACT OF EMPLOYMENT"
Parties to a contract may agree in advance to submit to the jurisdiction of a given court. National Equipment Rental v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). The employment contract was written in the language used by Mr. Lejano's own government in the interests of its own citizens, including the choice-of-law and forum selection clauses. See Prado, 611 So.2d at 703. The forum selection clause was conspicuously written on one page of the two-paged contract. Mr. Lejano signed the contract on both pages. Mr. Lejano's claim that he did not understand the language in which it was written is of no consequence in light of the Philippine employment services' structure, the fact that the POEA acted on his behalf in negotiating and bargaining for the terms of the contract, and the fact that Mr. Lejano signed the POEA-approved contract, thereby submitting to the terms thereof, and consequently, being afforded any benefits and advantages of other provisions of the contract. "When parties reduce their contracts to writing, and when the terms of the writing exhibit no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses the true and complete undertakings of the parties." Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, 75 (1943), citing Rodgers v. S.H. Bolinger Co. 149 La. 545, 89 So. 688, 690 (1921).
Pursuant to the terms of the forum selection provisions of the collective bargaining agreement and the employment contract, Mr. Lejano has the option of bringing his cause of action in either Norway or the Philippines, the place of his own domicile. It is Mr. Lejano's contention that the applicable substantive laws are the laws of the Philippines. Except as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply. Lauritzen v. Larsen, 345 U.S. 571, 588, 73 S.Ct. 921, 931, 97 L.Ed. 1254 (1953). Certainly, the employment contract drafted and approved by the Philippine government, particularly the POEA, would be enforceable under the laws of that country. This court is not inclined to extract the forum selection provision of the employment contract, which would otherwise be enforceable under Philippine law, and render the clause unenforceable when the clause prevails under the standards promulgated by the Court in The Bremen. Under these circumstances, this court finds that the forum selection provision of the employment contract is not adhesive, neither is it affected by fraud, undue influence, or overweening bargaining power. Moreover, Mr. Lejano has failed to make a clear showing that enforcement would be unreasonable, unjust, fraudulent or overreaching. Following the standards of The Bremen, we hold that the forum selection provision of the employment contract is enforceable. Accordingly, we further find that the trial court's ruling that plaintiffs must file their claims in either the Philippines *169 or Norway is not a disguised transfer on the basis of forum non conveniens. Because we find that the forum selection clause contained in the employment contract is enforceable, we decline to make a determination of the applicable substantive law by analyzing the case pursuant to the Lauritzen-Rhoditis choice-of-law test.[10]
Plaintiffs also argue that the language of the forum selection clause in the employment contract is permissive, not mandatory. Specifically, the provision states that the suit "may" be brought in either Norway or the Philippines. Plaintiffs contend that because "may" is used in lieu of "shall", they are not limited to either of these fora. An examination of the parties' intention is dispositive of this issue. Although the provision states that the seaman "may" bring his claims in either the Philippines or Norway, it is highly improbable that the parties would take measures of specifying these two fora, only to mean that the seaman may actually bring his claim in any forum as he otherwise could absent such a provision. Such a result would render the forum selection clause of the employment contract absolutely meaningless and useless. For this reason, we reject this argument. Moreover, enforcing the forum selection clause under these facts gives effect to the parties' legitimate expectations. See The Bremen, 407 U.S. at 12, 92 S.Ct. at 1914.
Mr. Lejano further argues that during the pendency of his case in the courts of this state, his claims have prescribed in both Norway and the Philippines, and that consequently, he will be deprived of his day in court should this court require him to file in either of these fora. In The Bremen, the Court stated "... [I]t should be incumbent on the party seeking to escape his contract to show that the trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." The Bremen, 407 U.S. at 16, 92 S.Ct. at 1916. In the present case, defendants have agreed to waive the defense of prescription. Defendants testified at the hearing before the trial court, as well as during oral argument before this court, that they will concede that prescription has been interrupted.[11] Furthermore, the trial court has assured protection of Mr. Lejano's "day in court" by staying the matter for six months, during which time Mr. Lejano is to file suit in either Norway or the Philippines. The trial court also stated in its Judgment that "if the plaintiffs can show that the defendants are attempting to frustrate their efforts to pursue this claim in a foreign forum, this Court will proceed to adjudicate this claim applying Philippine or Norwegian law." Therefore, Mr. Lejano does have safeguards against the loss of his day in court based on any claims of prescription. Moreover, Mr. Lejano has made no showing that it would be unfair, unjust or unreasonable to hold him to his end of the bargain.
Louisiana courts have previously enforced forum selection clauses. See Prado, 611 So.2d at 691. See also, Barcelona, 619 So.2d at 741. In Prado, a Filipino seaman brought a maritime tort action against the owner of a vessel on which he was injured. He had signed an employment contract which contained a choice-of-law provision, specifying application of Philippine law. The seaman was also hired through the POEA. The court enforced the provisions of the forum selection clause. The court reasoned that the seaman's employment contract was in a form and used the language required by his own government in the interests of its own citizens, including the choice-of-law and forum selection clauses. The court found that there can be no basis for Prado to complain that Asiento, the defendant, took advantage of him in negotiating the language of the contract, and further, that Prado cannot complain *170 that the Philippines is a "remote alien forum". See The Bremen, 407 U.S. at 1, 92 S.Ct. at 1909. The court stated, "we cannot be persuaded that whatever forum Prado's claim would be referred to in the Philippines would be less favorably inclined towards him than towards an non-resident alien entity such as Asiento. When the Bremen court used the terms "unjust and unreasonable" it was not referring to Prado's desire to choose the forum of maximum recovery." Prado, 611 So.2d at 703. Moreover, the Prado court found that The Bremen standard had not been satisfied, for Prado had not accused Asiento of fraud or overreachingneither was there anything to suggest that the agreement was an adhesive one. See Prado, 611 So.2d at 703. See also, The Bremen, 407 U.S. at 16, 92 S.Ct. at 1916. Ultimately, the court ordered that the proceedings be stayed for six months, during which time Prado was to furnish the trial court with satisfactory proof that he has complied with the court's order to file his claim in a forum in the Philippines. It was further ordered that in the event Prado should produce satisfactory proof to the trial court that Asiento has attempted to frustrate his efforts to pursue this claim in a Philippine forum by raising objections based upon the filing of this claim by Prado first in the U.S., the court would hear the case.
In Barcelona, the forum selection provision was identical to the one in the instant case. See Lejano, 688 So.2d at 90. The court enforced the provisions thereof in Barcelona as well. In Barcelona, twelve seamen and the parents of one seaman who was killed in the course and scope of his employment, brought action against the M/V SEA VICTORY, for the alleged breach of a maritime employment contract. The deceased seaman's parents alleged wrongful death, and the sources for their damage claims include the Jones Act and general maritime law. The court of appeal addressed the issue of the enforceability of the forum selection provision of the contract, which required that litigation between the parties be conducted in the Philippines. The trial court found in favor of the defendants and granted defendants motion for summary judgment. The court of appeal affirmed. The court of appeal reasoned that Louisiana has no interest in resolving disputes between Philippine citizens and foreign corporations arising from contracts drafted, regulated, and approved by the Philippine Overseas Employment Administration, and signed in the Philippines. The court of appeal noted that the Philippines has a substantial public interest in providing these seamen with a fair hearing and just resolution of their claims.
Plaintiffs in the present case allege that the court of appeal erred in failing to follow the "law of the case" established by an earlier decision of another panel of the same court which was rendered on March 1, 1995 in this case. The "law of the case" principle embodies the rule that an appellate court will not reconsider its own rulings of law in the same case. However, the doctrine is discretionary and is not applicable in cases of palpable error or when, if the law of the case were applied, manifest injustice would occur. Vincent v. Ray Brandt Dodge, 94-291 (La. App. 5 Cir. 3/1/95), 652 So.2d 84, 85, writ denied 95-1247 (La.6/30/95), 657 So.2d 1034, citing Landry v. Aetna Ins. Co., 442 So.2d 440 (La.1983). In its March 1, 1995 decision, the court of appeal found that because plaintiffs stated claims under the Jones Act and general maritime law, plaintiffs had a cause of action, and further, that plaintiffs indeed had a right of action because plaintiffs were the injured parties. However, in its subsequent opinion on January 9, 1996, the court of appeal's decision addressed the trial court's disposition of defendants' motion for partial summary judgment, which was based on the forum selection clause in the employment contract between Mr. Lejano and defendant. In the earlier decision, the court of appeal did not address the forum selection clause. Because the issues in the court of appeal's March 1, 1995 decision and the January 9, 1996 decision were different, the court of appeal did not violate the "law of the case" principle.
Plaintiffs further allege that Act 943 of the 1997 Legislature invalidates the forum selection clause. The Louisiana Legislature recently enacted Act 943, which amended Louisiana Revised Statute 51:1407. Act 943 provides in pertinent part:
"... It being against the public policy of the State of Louisiana to allow a contractual *171 selection of venue or jurisdiction contrary to the provision of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of a civil action, may be enforced against any plaintiff in any action brought in these courts...."
La. R.S. 51:1407 is entitled "Unfair Trade Practices and Consumer Protection Law". Act 943 was clearly not intended to apply to forum selection clauses in maritime law casesapplication of Act 943 is to "provide for venue to sue professional solicitors; to expand the definition of `professional solicitor'; to provide for violations and penalties; and to provide for related matters." H.R. 395, 23rd Reg. Sess. (La.1997). Act 943 is limited in scope to transactions or interactions between out-of-state, professional telephone solicitors and Louisiana residents;[12] therefore, it does not forbid forum selection clauses as against public policy as they relate to maritime law causes of action. Accordingly, we find that Act 943 is inapplicable to the facts of this case.
A motion for summary judgment is proper when the pleadings, depositions, answers and omissions on file, together with the affidavits submitted, show that there is no genuine issue of material fact, so that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Bijou v. Alton Ochsner Medical Foundation, 95-3074 (La.9/15/96), 679 So.2d 893. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except as disallowed by law. See La. C.C.P. art. 966(B). When analyzing the forum selection clause in the instant case in light of the record and under the appropriate federal standards, particularly, the standard promulgated in The Bremen, there is no genuine issue of material fact as to the enforceability of the forum selection clause. Although our courts have concurrent jurisdiction over plaintiffs' maritime action, as the United States Supreme Court noted, "jurisdiction in maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable." Lauritzen v. Larsen, 345 U.S. at 591, 73 S.Ct. at 932. Moreover, resolving this issue by way of a motion for partial summary judgment promotes judicial economy, averts the accrual of unnecessary costs by the parties and curtails any further delay in the parties' proceeding for trial on the merits. Thus, the trial court did not abuse its discretion in granting defendant's motion for partial summary judgment.

DECREE
For the foregoing reasons, we hold that the forum selection clause is enforceable. Accordingly, we affirm the judgment of the trial court, as affirmed by the court of appeal, granting defendants' partial motion for summary judgment.
AFFIRMED.
KIMBALL, J., concurs in part and dissents in part.
VICTORY, J., concurs in part and dissents in part for the reasons assigned by KIMBALL, J.
KNOLL, J., not on panel. Rule IV, Part 2, § 3.
KIMBALL, Justice, concurring in part and dissenting in part.
I concur in that portion of the majority opinion which holds the forum selection clause is enforceable. I dissent, however, from that portion of the opinion which implies that a Louisiana court can adjudicate plaintiff's claims should he be unsuccessful in his suit filed either in Norway or the Philippines. Either the forum selection clause is valid or it isn't. Although the grave difficulty or inconvenience of having a trial in the jurisdiction provided for in the forum selection *172 clause is a valid consideration when determining whether the clause is valid, that the claim may ultimately be unsuccessful there is not.

ON APPLICATION FOR REHEARING
CALOGERO, C.J., and LEMMON and KIMBALL, JJ., dissenting from the denial of the Application for Rehearing.
In the trial court, the defendants filed a motion for summary judgment on the choice of laws. The trial granted the summary judgment and ruled that Norwegian law applies. Although no pleadings raised the issue, the trial court further ruled that the forum selection clause was valid and enforceable, and accordingly dismissed the action rather than simply applying Norwegian law in this forum.
After the court of appeal affirmed the summary judgment, this court addressed the forum selection clause and affirmed its validity. On application for rehearing, plaintiffs claim that the trial court, in granting summary judgment on the forum selection clause, did not have (and therefore could not have considered) the information necessary to determine whether the forum selection clause was a contract of adhesion, because no pleadings notified the parties of the need to present evidence on that issue. Although the claim could have been raised earlier, plaintiff may have been misled by the defendant's deficient pleading.
In the interest of justice, we would grant the application for rehearing in part. While we would reaffirm our general conclusion on original hearing that "a forum selection should be enforced absent a clear showing that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching," we would set aside that portion of the summary judgment relating to the validity of this particular forum selection clause and remand the case to the trial court. Defendants then could raise the forum selection clause issue by appropriate pleadings,[1] and both sides would have the opportunity to present relevant evidence.
NOTES
[1] In July, 1993, the K.S. Bandak sold the M/V BANDAK to K.S. Bandak, II, a partnership also owned by Borgestad, Inc.
[2] The trial court determined that on the date of the accident, as well as on the date the vessel was attached, AS Borgestad, a Norwegian corporation, owned substantial shares in the vessel through its wholly-owned subsidiary, AS Borgestad Shipping, and that AS Borgestad was the sole shareowner of the named general partner in the two partnerships (KS Bandak and KS Bandak II).
[3] Declinatory exceptions were lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of citation, insufficiency of service of process and improper venue.
[4] The Judiciary Act of 1789, § 9, 1 Stat 73, 76-77 (1789) provides:

"The district courts ... shall ... have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, ... saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."
[5] In note 81, the author points out that the importance of noting that state courts which say that they "have in rem jurisdiction" pursuant to seizures of vessels refer to in rem jurisdiction in "the broad sense" as opposed to the "strict" sense applicable to the maritime action in rem. The author notes that "the central characteristic of the maritime action in remin rem in the strict senseis that `a judicial sale in the proceeding conveys title good against the world.'" As the author indicates, state courts cannot do that.
[6] 619 So.2d 741 (La.App. 4th Cir.1993), writ denied, 626 So.2d 1179 (La.1993).
[7] 611 So.2d 691 (La.App. 4th Cir.1992), writ not considered, 613 So.2d 986 (La.1993).
[8] Compare Stewart Organization, Inc. v. Ricoh Corporation, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)[held that federal law governs the decision whether to grant a motion to transfer pursuant to 28 U.S.C. § 1404(a) to a venue provided in the forum selection clause, thereby recognizing another exception to the general rule that state law governs matters of procedure].
[9] "NIS": (The Norwegian International Ship Register Act).
[10] In Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the United States Supreme Court delineated seven factors which influence the choice-of-law to govern a maritime tort claim and the weight and significance accorded them. The factors are (1) place of wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the seamen; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum.

The Court in Hellenic Lines Limited v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) expanded the list to include the shipowner's base of operations as an additional factor.
[11] See trial transcript, p. 4. November 7, 1995.
[12] During the committee meeting, the following was stated:

Barbara Ballard: "This section or this chapter in the revised statutes only addresses professional solicitations for charitable organizations. So unless they're asking for money for a charity, it has nothing to do with those calls..."
Senator Fields: "I just want to offer up the amendment.... It deals with Louisiana residents if you got a[n] out of state entity or corporation or solicitor, if you will, and that Louisiana resident, something happens and a lawsuit if filed then a Louisiana resident does not have to go to Texas or toto wherever the corporation is. They can file suit in their own resident state in their jurisdiction as opposed to making our citizens go out to Texas or to Milwaukee or wherever the case may be." Louisiana State Senate, Commerce and Consumer Protection Committee, June 4, 1997. (Discussion of Bill # 395).
[1] See Robert A. Casad, Jurisdiction in Civil Actions §§ 1.07, 3.01[5][c][iv] (2d ed. 1991).