JOHNSON, Chief Justice.
hWe granted this writ application to resolve a split in the circuit courts of appeal regarding whether forum selection clauses are per se violative of public policy in Louisiana. Answering that question in the *872 negative, we reverse the rulings of the lower courts.
FACTS AND PROCEDURAL HISTORY
Shelter Mutual Property Insurance Company (“Shelter”) retained Rimkus Consulting Group, Inc. (“Rimkus”) to provide an engineering evaluation and expert witness services in connection with its defense of litigation resulting from a claim for hurricane damages brought by a corporation insured by Shelter. Rimkus sent Shelter a letter confirming the engagement and indicating Rimkus’ services were subject to its “Terms and Conditions” attached to the letter. The “Terms and Conditions” included a forum selection clause which required venue for any suits arising out of the contract to be in Harris County, Texas.
When a dispute arose, Shelter filed suit against Rimkus in the 15th Judicial District Court for the Parish of Lafayette. Shelter essentially asserted Rimkus issued an erroneous opinion relative to the cause of the property damage and failed to Improperly estimate the underlying repair costs, causing Shelter to incur liability for bad faith damages and additional costs relative to further litigation.[1] Rimkus filed an exception of improper venue, arguing the forum selection clause included in its “Terms and Conditions” required suit to be brought in Texas. Shelter opposed the exception, arguing it never agreed to the unilateral “Terms and Conditions” and thus they were not part of the agreement between the parties. Further, Shelter asserted even if the “Terms and Conditions” formed part of the agreement, the forum selection clause should not be enforced because enforcement would be unreasonable, unjust, and contravene a strong public policy of Louisiana.
The trial court found the parties had tacitly agreed to be bound by the “Terms and Conditions.” Recognizing a split in the circuit courts of appeal regarding whether forum selection clauses violate the public policy of this state, and being bound by the Third Circuit, the trial court overruled Rimkus’ exception of improper venue citing Thompson Tree & Spraying Serv., Inc. v. White-Spunner Const., Inc[2] which held forum selection clauses are against the public policy of Louisiana. Rimkus applied for supervisory writs and the court of appeal denied the writ, finding no error in the trial court’s ruling.[3] Rimkus filed the instant writ application in this court, which we granted.[4]
DISCUSSION
While we granted this writ application solely to resolve the split in the circuits regarding whether forum selection clauses violate public policy in Louisiana, as a ^preliminary matter we first briefly address Shelter’s assertion that the “Terms and Conditions” containing the forum selection clause were not negotiated terms between the parties and therefore not part of its agreement with Rimkus.
Contrary to Shelter’s contentions, we find the trial court clearly ruled the “Terms and Conditions” applied to the *873 parties. Although the trial judge denied the exception of venue based on Thompson Tree, a reading of the transcript demonstrates that he also determined the “Terms and Conditions” applied. Specific to the parties’ arguments relative to whether the “Terms and Conditions” were applicable, the trial judge stated “[wjell, frankly, I’m prepared to make some decisions relative to the merits of that argument so that when it goes forward, a Court of Appeal or the Supreme Court has an opportunity to look at it.” The court went on to rule:
All right. The issue with respect to venue is denied based on the Thompson Tree Service case. I believe I am obligated to follow the recent dictates of the Third Circuit relative to a forum selection clause. Absent Thompson Tree Service, I was inclined to grant the motion. While there is no written contract in this particular case, in looking at the details associated with the “terms and conditions” provided and without objection, and considering the prior contractual agreement between the parties, I believe that the forum selection clause would prevail.
Of specific note is the detail of how billing would be done in the terms and conditions. And I cannot imagine that all those terms and conditions relative to billing would have been discussed by a telephone call which did no more than employ Rimkus and do expert work for this case.
Under those circumstances, it is clearly more probable than not that the parties had agreed tacitly to return to the terms and conditions of allotment. Nevertheless, because of the Thompson Tree Service ease, the matter stays before me, much to my chagrin. (Emphasis added).
After reviewing the record, we agree with the trial court’s ruling and hold the course of conduct between the parties supports a finding that the parties tacitly agreed the “Terms and Conditions” would be applicable to Shelter’s engagement of Rimkus. The “Terms and Conditions” were sent to Shelter as part of Rimkus’ confirmation letter ^accepting the job assignment and agreeing to provide services to Shelter. Shelter had previously retained Rimkus for consulting services numerous times and the same “Terms and Conditions” were routinely provided as part of its job acceptance.[5] Further, on three prior occasions, the same counsel for Shelter expressly accepted these “Terms and Conditions.” There is nothing in the record to indicate Shelter disputed or objected to the “Terms and Conditions” prior to opposing the exception of venue. And, as noted by the trial court, the parties acted in accordance with the “Terms and Conditions” relative to billing and payments during the job assignment. Notably, the “Terms and Conditions” is the only agreement or contract in the record which sets forth particular provisions and obligations of the parties relative to this job assignment. Finding the “Terms and Conditions” applicable, we now examine jurisprudence relative to the enforceability of forum selection clauses in Louisiana.
“A forum selection clause is a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship.”[6]
*874 Historically, many American courts had found such clauses to be invalid as against public policy. However, that began to change in 1972 with the United States Supreme Court’s decision in Bremen v. Zapata Off-Shore Co,[7] In Bremen, the Court noted that forum selection clauses had not been historically favored by American courts and that “many courts, federal and state, have declined to enforce such clauses on the ground that they were ‘contrary to public policy,’ or that their effect was to ‘oust the jurisdiction’ of the court.”[8] The Bremen Court rejected that viewpoint. The Court 15described the traditional view that forum selection clauses imper-missibly oust courts of jurisdiction as a “vestigial legal fiction.”[9] The Court concluded that such clauses should be deemed presumptively valid and ordinarily enforceable, unless enforcement would be unreasonable, or the consent of the party challenging the clause was obtained through fraud or undue influence, or the chosen forum is unreasonable and seriously inconvenient.[10]
Bremen arose under the federal court’s admiralty jurisdiction and thus does not mandate that state courts enforce forum selection provisions outside of an admiralty context. However, the Supreme Court’s analysis in Bremen influenced the enforceability of forum selection clauses in subsequent state court litigation, including Louisiana. Prior to the Third Circuit’s decision in Thompson Tree, our appellate courts had repeatedly held that forum selection clause are generally legal and binding in Louisiana, and anyone seeking to set one aside bears a heavy burden of proof.[11] These decisions followed the Supreme Court’s reasoning in Bremen, and generally held forum selection clauses should be enforced, unless the resisting party proves that enforcement would be unreasonable and unjust, or that enforcement | ¿would contravene a strong public policy for the forum where the suit is brought. The Louisiana Third Circuit Court of Appeal in Thompson Tree reversed course on this standard enforcement of forum selection clauses and held that such clauses are unenforceable because they violate the Louisiana Code of Civil Procedure and the strong public policy of Louisiana.[12]
*875 In considering the enforcement of forum selection clauses, the court in Thompson Tree pointed out that under a civil law system, legislation is the authoritative source of law, noting that “[t]here are two sources of law in Louisiana: legislation and custom, with legislation superceding custom in every instance.”[13] The court specifically declined to accept the holdings from the other circuits making forum selection clauses enforceable in Louisiana, reasoning that none of those cases examined the primary source of law in Louisiana and instead relied on the United States Supreme Court’s pronouncements.[14]
The court derived a general policy statement against forum selection clauses from La. C.C.P. art. 44(A), which provides that “an objection to the venue may not be waived prior to the institution of the action.” The court further relied on La. R.S. 51:1407, which provides, in pertinent part:
It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in 17these courts. (Emphasis added)
Although this provision is part of the Unfair Trade Practices Act (“UTPA”), the court in Thompson Tree found it was not limited to that context because the public policy stated in La. R.S. 51:1407(A) was not being declared in that statute.[15] The court noted that the “legislature refers to the already-existing public policy and applies it to the situations the Unfair Trade Practices Act (UTPA) addresses....”[16] According to the court, Article 44(A) is an “explicit expression of the legislative will from which La. R.S. 51:1407(A) derives its policy statement.”[17] Thus, the court concluded the fact “that the restatement of the policy appears in the UTPA does not mean it is not a public policy outside of UTPA.”[18]
The court also cited to La. R.S. 9:2779,[19] wherein the legislature declared *876 forum selection clauses in certain construction contracts against public policy when the construction contract involves a Louisiana domiciliary and the work is to be done in Louisiana. Rather than limiting the public policy statement in that statute to situations involving such constructions contracts, the court found the statute merely |8expanded the temporal component of Article 44(A) by providing that “parties whose circumstances fit under La. R.S. 9:2779 may not consent to venue outside of this state even after the litigation has started as such an agreement would violate the public policy of this State.”[20] However, the court ultimately determined the case did not fall within La. R.S. 9:2779 because none of the parties in the case was a Louisiana domiciliary. Thus, the court stated the general provision of the Code of Civil Procedure with respect to venue applies and Article 44(A) clearly and unambiguously prohibits waiver of the Code’s venue provision prior to the institution of the action.[21] Following Thompson Tree, other Louisiana appellate courts have refused to follow the Third Circuit’s lead.[22]
This court has discussed the enforceability of forum selection clauses in Louisiana, but has never squarely addressed the issue in light of public policy and La. C.C.P. art. 44(A). In Lejano v. Bandak,[23] this court applied federal law in considering the enforceability of a forum selection provision in an admiralty action. Citing Carnival Cruise Lines, Inc. v. Shute,[24] we noted “in admiralty cases, federal law governs the enforceability of forum selection clauses.” [25] Thus, based on Bremen, this court stated that forum selection clauses are “prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the | circumstances.”[26] Further, this court rejected an argument that La. R.S. 51:1407 invalidated the forum selection clause, pointing out that provision was part of the Unfair Trade Practices and Consumer Protection Law and holding that La. R.S. 51:1407 “is limited in scope to transactions or interactions between out-of-state, professional telephone solicitors and Louisiana residents; therefore, it does not forbid forum selection clauses as against public policy as they relate to maritime law causes action.”[27] Our holding in Lejano relative to the enforcement of forum selection clauses was limited to the maritime context.
In Sawicki v. K/S STAVANGER PRINCE,[28] this court addressed the validity of a forum selection clause in a seaman’s employment contract. We considered whether the rule of Lejano would apply in light of the newly enacted statute, La. R.S. *877 28:921 A(2), which limits the enforcement of forum selection clauses contained in employment contracts. Finding the statute applied, we concluded the forum selection clause violated the state’s public policy as stated in the statute. Sawicki applied this specific statute to the facts of that case and does not stand for the general proposition that all forum selection clauses are unenforceable in Louisiana.
Additionally, in Power Marketing Direct, Inc. v. Foster,[29] this court cited Le-jano for the proposition that “forum selection clauses are legal and binding in Louisiana and should be enforced absent a clear showing that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching.” However, the enforceability of a forum selection clause was not at issue in that case and thus this statement is dicta. Further, as explained above, Lejano |ininvolved the enforceability of a forum selection clause under federal law, not Louisiana law.
Finally, in Meyer & Assoc, v. Coushatta Tribe of La.,[30] this court considered whether the Coushatta Tribe had waived its sovereign immunity via forum selection clauses in its contracts with an engineering firm. The clauses at issue provided in relevant part that “any dispute arising hereunder shall be heard by a court of competent jurisdiction in the Parish of Allen, or other Parish mutually agreed to,” and that the tribe “specifically waives any rights, claims, or defenses to sovereign immunity it may have as it relates to this Agreement....” This court noted there was “no doubt that the language contained in the forum selection clauses would suffice to waive the Tribe’s sovereign immunity, if the clauses are valid” when it rejected the tribe’s argument that the tribe chairman who executed the agreements did not have authority to execute a waiver of sovereign immunity. The issue of whether forum selection clauses violate Louisiana’s public policy was not before the court.
With this background in mind, we now consider the res nova issue of whether forum selection clauses are per se violative of public policy in Louisiana. Rimkus argues that contrary to the court’s holding in Thompson Tree, forum selection clauses in contracts do not violate any express public policy of Louisiana. Rimkus asserts La. C.C.P. art. 44(A) makes no express statement of Louisiana public policy. Rather, Article 44(A) prohibits waiver of objections to the venue prior to suit, but does not prohibit contracts selecting a venue or forum by the parties prior to a dispute or suit. Further, Rimkus argues neither La. R.S. 9:2779 nor La. R.S. 51:1407(A) preclude forum selection clauses under the facts of this case. La. R.S. 9:2779 applies only to certain construction contracts, and expressly prohibits forum selection clauses in specific circumstances. La. R.S. 51:1407(A) goes a step further than Article 44(A) and expressly prohibits enforcement of forum selection clauses against a UTPA plaintiff in certain situations. Rimkus argues if Article 44(A) “clearly and unambiguously prohibits waiver of the Code’s venue provisions prior to the institution of an action” as held by the court in Thompson Tree, then the legislature’s enactment of La. R.S. 9:2779 was redundant and unnecessary. Further, there would have been no need for the legislature to add the public policy language to La. R.S. 51:1407(A) if Article 44(A) already prohibited the enforcement of a pre-suit contractual selection of venue against all plaintiffs.
*878 By contrast, Shelter contends Thompson Tree correctly held such clauses are void and against Louisiana’s stated policy prohibiting contractual waivers of venue requirements prior to suit. La. C.C.P. art. 44(A) prohibits waiver of the Code’s venue provisions prior to suit. Shelter argues a forum selection clause, by its very nature, results in the waiver of the Code’s venue provisions prior to the institution of an action. Further, Shelter asserts the legislature plainly declares this state’s policy against forum selection clauses in La. R.S. 51:1407(A). Reading the text of that article in pari materia with Article 44(A), it follows that the legislature was referring to an already-existing public policy against forum selection clauses, not declaring a new public policy which only applies in UTPA matters. Additionally, in La. R.S. 9:2779, Shelter contends the Legislature reiterated in another context that such agreements are inequitable and against the public policy of this state. Shelter also cites La. R.S. 23:921[31] as an example of the Legislature voicing this state’s general | ^prohibition against choice of forum clauses.
After considering the law, briefs and arguments of the parties, we now hold that forum selection clauses are generally enforceable and are not per se violative of public policy in Louisiana. The Third Circuit in Thompson Tree concluded that forum selection clauses are generally unenforceable in Louisiana primarily based on its rationale that the legislature, by virtue of La. C.C.P. art. 44(A), has specifically declared a strong public policy against forum selection clauses. We find the lower courts erred in relying on this flawed interpretation of Article 44(A).
This court has explained:[32]
The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.
The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a *879 law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
Further, the legislature is presumed to act with full knowledge of well-settled principles of statutory construction.[33] With these principles in mind, we examine the | ^language of Article 44(A).
Included in the adoption of the Code of Civil Procedure in 1960, Article 44 simply states: “[a]n objection to the venue may not be waived prior to the institution of the action.” According to our venue provisions, “[v]enue refers to the parish where an action may properly be brought.”[34] Contrary to Thompson Tree, we do not find Article 44(A) unequivocally addresses the enforceability of forum selection clauses. The plain language of Article 44(A) only prohibits the waiver of objections to the venue prior to the institution of suit, thereby providing protection to a defendant — the party entitled to object to the venue selected by the plaintiff. As noted by Rimkus, Article 44(A) does not state that “venue may not be waived prior to the institution of an action.” Instead, the article focuses on the objection to the venue. An objection to “the venue” is raised through a declinatory exception to venue under La. C.C.P. art. 925(A)(4),[35] and only available to a defendant. The court in Thompson Tree improperly expanded the language of Article 44(A) to prohibit a party from contractually agreeing to bring suit in a specific forum. Article 44(A) merely allows a defendant to object to being sued in a parish that otherwise would be improper. Nothing in the instant forum selection clause requires the parties to waive their objections to venue. The forum selection clause in the “Terms and Conditions” represents Rimkus’ and Shelter’s contractual agreement to bring any litigation arising under their contract in Harris County, Texas, thus making it the proper venue as to this action. In sum, we find the language of Article 44(A) to be clear and unambiguous and its application does not lead to absurd consequences. Thus, we need look no further and need not examine the historical formation of Article 44(A) |14in search of the intent of the legislature.
Moreover, to deduce an express statement of public policy from Article 44(A) would require us to conclude that despite this alleged strong legislative expression of public policy against pre-suit contractual selections of venue, the legislature will readily allow enforcement of the contractually selected venue in those cases where the defendant intentionally or inadvertently fails to timely raise the declinatory exception to venue. La. C.C.P. art. 44(C) provides: “Except as otherwise provided in this article or by other law, any objection to the venue, including one based on any article in this Chapter, is waived by the failure of the defendant to plead the declinatory exception timely as provided in Article 928.” Thus, under the interpretation of Article 44(A) in Thompson Tree, a defendant could agree to a forum selection clause prior to suit and elect not to raise an exception of venue after suit is filed in the agreed upon venue, effectively circumventing Article 44(A). Such a result supports our conclusion that Article 44(A) does not set forth a strong public policy *880 statement proscribing parties from contracting in advance of litigation that suits arising out of that contract must be brought in a specific venue.
We also glean no broad statement of public policy from La. R.S. 9:2779(A), La. R.S. 51:1407(A) or La. R.S. 23:921(A)(2). This court has recognized:
When interpreting a statute, the court should give it the meaning the Legislature intended. It is presumed that every Word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless. The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject.[36]
11sLa. R.S. 9:2779(A) was enacted in 1991 and expressly declares out-of-state forum selection clauses against public policy in certain construction contracts. Specifically, the statute refers to construction contracts for “public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state,” and states that “provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state ... are inequitable and against the public policy of this state.” If the broad interpretation of Article 44(A) in Thompson Tree is to be accepted and if a prohibition against forum selection clauses already existed by virtue of Article 44(A), there was no reason for the legislature to enact the public policy statement in La. R.S. 9:2779(A) relative to this small subset of construction contracts.
Reliance on La. R.S. 51:1407(A) would be similarly baseless. The Louisiana Unfair Trade Practices Act was enacted by the Legislature in 1972[37] and included La. R.S. 51:1407, which provides the procedure for initiating a state action under the UTPA. The statute gives the attorney general power to institute legal proceedings in the name of the state against any person when he has reason to believe that such person is using, has used, or is about to use any unlawful unfair method, or deceptive act, or practice. In 1997, the statute was amended by Act 943 to “provide for venue to sue professional solicitors; to expand the definition of ‘professional solicitor’; to provide for violations and penalties; and to provide for related matters.”[38] In relevant part, the amendment provided the proper venue for suits against such persons, and further provided that “[i]n the event that such person was located outside of the state, 11fibut was soliciting in the state by mail, telephone, or any electronic communication, the action may be brought in the district court having civil jurisdiction in the parish in which the contact was made.” The amendment went on to state:
It being against the public policy of the state of Louisiana to allow a contractual *881 selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts.”[39]
Although this statutory public policy language appears broad at first glance, viewing the language in the proper context of the amendment makes clear its application is limited. As we explained in Lejano, the language in this statute is limited in scope to transactions or interactions between out-of-state, professional telephone solicitors and Louisiana residents.[40] If Article 44(A) has the expansive meaning assigned by Thompson Tree and adopted by Shelter, the restatement of public policy language in this limited situation is redundant and unnecessary.
Finally, La. R.S. 23:921(A)(2) prohibits forum selection clauses in employment contracts unless the choice of forum clause “is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is subject to the civil or administrative action.” Likewise, the legislature’s enactment of this specific limitation of forum selection clauses serves no purpose if Article 44(A) is read to provide a general public policy against any such clause.
After examining the above statutes, it is clear the legislature has only declared forum selection clauses unenforceable and against public policy in very limited circumstances. We reject a blanket application of the public policy stated in these statutes to every contractual forum selection clause. The legislature has clearly |17provided for a more limited application, and has recognized Louisiana’s public policy only militates against the use of forum selection clauses in these particular circumstances. The legislature has been unequivocal in these specific contexts to establish that forum selection clauses contravene a strong public policy in Louisiana. Notably, nowhere in these statutes does the legislature cite to Article 44(A) as the source of an already-existing public policy against forum selection clauses.
Based on our review of the law, we find no reason for Louisiana to deviate from the general rule set forth by the United States Supreme Court that contractual forum selection clauses are prima facie valid. We hold that such clauses should be enforced in Louisiana unless the resisting party can “clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.... [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.”[41] This court has long recognized that the freedom to contract is an important public policy.[42] We have explained:
[P]arties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. “Freedom of contract” signifies that parties to an agreement have the right and power to construct their own bargains. In a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public *882 policy. The state may legitimately restrict the parties’ right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other matter of public policy.[43]
The right of parties to freely contract must encompass the correlative power to agree to bring suit under that contract in a particular forum. Upholding the lower courts’ |1RruIings would undermine the ability of parties to freely contract and would thereby impair the ability of companies to do business in this state. The parties in this case are commercially sophisticated entities who have a history of conducting business together. We find no prohibition under the facts of this case to prevent the parties from contracting to limit their disputes to any forum of their choosing, and there is nothing in the record which would support a refusal to enforce this particular forum selection clause. As the Court recognized in Bremen, the elimination of uncertainties relative to the location of litigation by agreement in advance on an acceptable forum to both parties is an indispensable element of trade, commerce and contracting.[44] Our ruling, holding forum selection clauses prima fade valid and generally enforceable, serves these important principles of free enterprise and commerce.
In reaching this conclusion, we recognize the legislature has the authority to enact a statute providing for wholesale prohibition on the enforcement of forum selection clauses. However, Article 44(A) is not such a provision. If indeed it is the intent of the legislature to declare such a public policy, we trust it will move to enact one.
DECREE
Accordingly, for the foregoing reasons, the judgments of the lower courts overruling Rimkus’ declinatory exception of venue are reversed.
REVERSED AND RENDERED.

. Craig Rogers, the Rimkus engineer assigned to the Shelter job, was also made a defendant.

. 10-1187 (La.App. 3 Cir. 6/1/11); 68 So.3d 1142, writ denied, 11-1417 (La.9/30/11); 71 So.3d 290.

. Shelter Mutual Insurance Co. v. Rimkus Consulting Group, Inc. of Louisiana, et al. 13-00283 (La.App. 3 Cir. 7/22/13) (unpublished).

. Shelter Mutual Insurance Co. v. Rimkus Consulting Group, Inc. of Louisiana, et al. 13-1977 (La. 12/6/13), 129 So.3d 525.

. The "Professional Fee Schedule” contained in the "Terms and Conditions” was regularly updated.

. Fidelak v. Holmes European Motors, L.L.C., 13-0691 (La. 12/10/13), 130 So.3d 851, 853.

. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

. 407 U.S. at 9, 92 S.Ct. 1907.

. Id. at 12, 92 S.Ct. 1907.

. Id. at 13, 17-18, 92 S.Ct. 1907.

. See, e.g., Fidelak v. Holmes European Motors, L.L.C., 47,915 (La.App. 2 Cir. 2/27/13), 111 So.3d 456, reversed on other grounds, 13-0691 (La.12/10/13), 130 So.3d 851; Barrett Auto Brokers v. Dealer Servs. Corp., 45,667 (La.App. 2 Cir. 9/22/10), 48 So.3d 322, 324, writ denied, 10-2381 (La. 12/10/10), 51 So.3d 734; Garrity Printing, LLC v. M & M Mortg. Inc., 10-290 (La.App. 5 Cir. 11/9/10), 54 So.3d 81, 84; Beevers & Beevers, L.L.P. v. Sirgo, 06-841 (La.App. 5 Cir. 2/27/07), 953 So.2d 840, 842; Case Atl. Co. v. Blount Bros. Const., Inc., 42,251 (La.App. 2 Cir. 6/20/07), 960 So.2d 1274, 1277, writ denied, 07-1541 (La. 10/12/07), 965 So.2d 403; Town of Homer v. United Healthcare of La., Inc., 41,512 (La.App. 2 Cir. 1/31/07), 948 So.2d 1163, 1167; Vallejo Enter., L.L.C. v. Boulder Image, Inc., 05-2649 (La.App. 1 Cir. 11/3/06), 950 So.2d 832, 835; ACG Mediaworks, L.L.C. v. Ford, 03-978 (La.App. 5 Cir. 3/30/04), 870 So.2d 1097, 1101; Reynolds v. Paulson, 03-1884 (La.App. 4 Cir. 3/31/04), 871 So.2d 1215, 1220; Pique’-Weinstein-Pique' Architects, Inc. v. New Orleans Aviation Board, 99-1231 (La.App. 5 Cir. 4/25/00), 762 So.2d 76, 78, writ denied, 00-1483 (La.6/30/00), 767 So.2d 41; Calahan v. Haspel, 99-44 (La.App. 3 Cir. 5/5/99), 732 So.2d 796; Pitts, Inc. v. Ark-La Res., L.P., 30,867 (La.App. 2 Cir. 8/19/98), 717 So.2d 268; Digital Enters., Inc. v. Arch Telecom, Inc., 95-30 (La.App. 5 Cir. 6/28/95), 658 So.2d 20.

.Both the Louisiana Fourth Circuit and the Louisiana Fifth Circuit courts of appeal have also issued opinions refusing to enforce forum selection clauses, but those decisions are *875 based on the particular facts of the cases and do not stand for the general proposition that forum selection clauses are per se violative of public policy in Louisiana. See Tulane Indus. Laundry, Inc. v. Quality Lube & Oil, Inc., 00-0610 (La.App. 4 Cir. 1/24/01), 779 So.2d 99; Gerrets v. Gerrets, 06-0087 (La.App. 4 Cir. 1/10/07), 948 So.2d 343; and Aquatic Lodging, LLC v. Bayou Boys Boat Rental, LLC, 11-382 (La.App. 5 Cir. 12/28/11), 82 So.3d 562.

. 68 So.3dat 1153.

. Id. at 1156.

. Id. at 1154.

. Id.

. Id.

. Id.

. La. R.S. 9:2779 provides, in pertinent part:
A. The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either: (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state; rather, such actions or proceedings may be pursued in accordance with the *876 Louisiana Code of Civil Procedure or other laws of this state governing similar actions.

. 68 So.3d at 1155 (emphasis added).

. Id.

. See Rising Res. Control, Inc. v. KIE Commodities and Fin., L.L.C., 11-1026 (La.App. 1 Cir. 12/21/11), 80 So.3d 1217, writ denied, 12-0658 (La.4/27/12), 86 So.3d 632; and Fidelak v. Holmes European Motors, L.L.C., 47,915 (La.App. 2 Cir. 2/27/13), 111 So.3d 456, reversed on other grounds, 13-0691 (La. 12/10/13), 130 So.3d 851.

. 97-388 (La. 12/12/97), 705 So.2d 158, cert. denied, Lejano v. K.S. Bandak Assuranceforeningen Gard, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998).

. 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

. Lejano, 705 So.2d at 166.

. Id.

. Id. at 171.

. 01-0528 (La. 12/7/01), 802 So.2d 598.

. 05-2023 (La.9/6/06), 938 So.2d 662, 675.

. 07-2256 (La.9/23/08), 992 So.2d 446.

. La. R.S. 23:921(A)(2) provides: The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee’s contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

. Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development, 10-0193 (La.1/19/11), 56 So.3d 181, 187 (citing M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La.7/1/08), 998 So.2d 16, 27).

. State v. Bedford, 01-2298 (La.1/28/03), 838 So.2d 758, 760; Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360 (La. 12/3/03) 860 So.2d 1112, 1119.

. La. C.C.P. art. 41.

. La. C.C.P. art. 925(A)(4) provides: The objections which may be raised through the declinatory exception include but are not limited to the following: (4) Improper venue.

. ABL Management, Inc. v. Board of Sup’rs of Southern University, 00-0798 (La. 11/28/00), 773 So.2d 131, 135 (internal citations removed).

. 1972 La. Acts 759, § 1. The Act is codified in title 51, chapter 13 of Louisiana Revised Statutes. Chapter 13 is entitled "Unfair Trade Practices and Consumer Protection Law.”

. 1997 La. Acts 943, § 1.

. Id.

. Lejano, 705 So.2d at 171.

. Bremen, 407 U.S. at 13, 92 S.Ct. 1907.

.In re Katrina Canal Breaches Litigation, 10-1823 (La.5/10/11), 63 So.3d 955, 962.

. Id. at 963 [citing Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716 (La.7/1/97), 696 So.2d 1373, 1380-81 ].

. Bremen, 407 U.S. at 15, 92 S.Ct. 1907.