RICHARD'S CLEARVIEW, LLC

VERSUS

STARR SURPLUS LINES INSURANCE
COMPANY

NO. 24-C-114

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 830-008, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING

June 05, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Scott U. Schlegel, and Timothy S. Marcel

**WRIT DENIED**
    **TSM**
    **SMC**

**CONCURS WITH REASONS**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/RELATOR,
STARR SURPLUS LINES INSURANCE COMPANY
    H. Alton Johnson, III
    Kevin W. Welsh
    Lee Ann C. Thigpen

COUNSEL FOR PLAINTIFF/RESPONDENT,
RICHARDS CLEARVIEW CENTER, LLC AND RICHARD'S CANAL STREET
PROPERTY, LLC
    Richard P. Voorhies, III
    William A. Barousse

**MARCEL, J.**

In this case arising from insurance claims on properties damaged during Hurricane Ida, defendant-relator Starr Surplus Lines Insurance Company ("Starr") seeks supervisory review of the February 6, 2024 trial court judgment denying its declinatory exception of improper venue and granting plaintiff's partial motion for summary judgment and motion to compel. For the following reasons, we affirm the judgment of the trial court.

BACKGROUND AND PROCEDURAL HISTORY[1]

On August 29, 2021, wind and water from Hurricane Ida caused significant damage to properties located at 4403-4500 and 4436 Veterans Boulevard (a shopping center and a parking garage) in Metairie, Louisiana, owned by plaintiff Richard's Clearview, LLC ("Clearview"). At that time, the properties were subject to a surplus lines policy of insurance (no. SLSTPTY11446721) issued by Starr, that specifically provided approximately $20,000,000.00 in coverage for damages caused by hurricanes, wind, and named storms for a twelve month term from August 1, 2021 to August 1, 2022.[2]

Clearview reported their losses to Starr on September 13, 2021. Starr inspected the damaged properties on September 23 and October 4, 2021. Clearview submitted on November 30, 2021 a 735-page proof of loss detailing $27,648,807.54 in damages to the shopping center as well as other invoices and repair estimates. On December 3, 2021, Starr tendered $500,000.00 on the claim. Around that time, disputes arose between the parties concerning the policy

---

[1] This case and its companion, 24-C-104, involve multiple properties located in Metairie, Louisiana, owned by affiliate companies that were all damaged by Hurricane Ida. While the facts and background of these cases contain slight differences, they both present the same legal issue to be resolved: the enforceability of a forum selection clause in a surplus line insurance policy. Though the policies at issue in each case are separate, they are both issued by Starr and contain identical language on the forum selection clause. Our analysis in both cases is substantively the same.

[2] Identified in the policy as its producer is CRC Insurance Services, whose address is listed at 3300 West Esplanade Ave. S., Suite 600, Metairie, Louisiana. The document recites that it was issued at Starr Specialty Lines Insurance Agency, LLC, in New York, New York.

deductible and the scope of the damage. No other loss payments were issued for the alleged damage to the properties.

Clearview instituted legal action against Starr in the 24th Judicial District Court for the Parish of Jefferson on July 1, 2022 with the filing of a Petition for Damages and Jury Demand to recover policy proceeds for property damage under the insurance contract as well as damages, penalties, and attorney's fees for breach of contract and bad faith investigation and claims handling under La. R.S. 22:1892 and 22:1973.

Starr filed and was granted a Notice of Removal to the United States District Court for the Eastern District of Louisiana on July 26, 2022, invoking that court's jurisdiction on the grounds of diversity of citizenship.[3] Following the removal, on August 25, 2022, Starr filed its Answer and Affirmative Defenses in the federal court. In its thirtieth affirmative defense therein, Starr asserts the action must be transferred to a court within the state of New York pursuant to the mandatory forum selection clause contained in the surplus line policy. Starr additionally asserts that Clearview's claims are subject to New York law based upon the choice of law clause also contained in the policy.

That clause states:

e. Choice of Law and Choice of Venue:

No suit, action, or proceeding regarding this POLICY for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this POLICY. The COMPANY agrees that any suit, action, or proceeding against it for recovery of any claim under this POLICY shall not be barred if commenced within the time prescribed in the statute of the State of New York. Any suit, action, or proceeding against the COMPANY must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York. The laws of the State of New York shall solely and exclusively be used and applied in any such suit, action, or proceeding, without regard to choice of law or conflict of law principles.

---

[3] According to its application to act as a surplus lines insurer in the State of Louisiana, Starr is domiciled in the State of Illinois.

In response to a motion to transfer the matter to the Southern District of New York filed by Starr, on November 4, 2022, the federal court issued an order dismissing the case pursuant to this forum selection clause. On February 6, 2023, the federal court vacated its order of dismissal upon a finding that it did not have subject matter jurisdiction because there was no diversity of citizenship.[4] At that time, the case was remanded to the 24th Judicial District Court for further proceedings.

In the 24th Judicial District Court, on March 22, 2023, Starr again filed an Answer and Affirmative Defenses to Clearview's petition for damages at which time it urged a declinatory exception of improper venue together with a memorandum in support, citing the policy's forum selection clause. Clearview opposed the exception by arguing the forum selection clause is prohibited by statutes contained in the Louisiana Insurance Code, and, alternatively, that the forum selection clause violates public policy. In addition, Clearview filed a motion for partial summary judgment on the choice of law provision of the policy seeking to have it declared unenforceable. Clearview also filed a motion for sanctions, or, alternatively, a motion to compel, for Starr's alleged violation of the Court's discovery order.

At the January 24, 2024 hearing on the exception, the trial court rendered judgment in open court denying the exception of improper venue upon a finding that the forum selection clause is a mechanism used by Starr to escape enforcement of Louisiana law which it had agreed to follow. The trial court also granted Clearview's partial motion for summary judgment and declared that Louisiana law would be applied to the claim. The court denied Clearview's request for sanctions,

---

[4] This decision was affirmed by the United States Court of Appeals for the Fifth Circuit on October 17, 2023.

but did order Starr to produce all information required under the discovery orders. Starr's timely filed application for supervisory review of that judgment followed.

In its writ application, Starr raises the following assignments of error:

1. The District Court erred when it failed to enforce the Policy's New York forum selection clause notwithstanding the plain language of La. R.S. 22:868(D), which authorizes surplus lines insurers to include "forum or venue selection clause[s]" in surplus lines policies.

2. The District Court erred in granting other affirmative relief to Clearview because it was not a proper venue given the applicable forum selection clause.

This writ and its companion present a *res nova* issue for this Court: whether forum selection clauses like the one contained in the Starr surplus line insurance policy are forbidden or permissible under Louisiana law. This we consider in our discussion below, beginning with a general overview of the law on forum selection clauses and the Louisiana Insurance Code before proceeding to interpretation of the relevant statutes and final determination on the question.

STANDARD OF REVIEW

Venue is a question of law. *Seghers v. LaPlace Equip. Co., Inc.*, 13-350 (La. App. 5 Cir. 2/12/14), 136 So.3d 64. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. *Yount v. Handshoe*, 14-919, (La. App. 5 Cir. 5/28/15), 171 So.3d 381, 384. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law *de novo* and renders judgment on the record. *Id*.

DISCUSSION

*Forum Selection Clauses in General*

A forum selection clause is a contract provision that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship. *Fidelak v. Holmes European Motors, L.L.C.*, 13-0691 (La. 12/10/13), 130 So.3d 851, 853. In its review of a service contract, the Louisiana Supreme Court held that forum selection clauses are generally enforceable and are not *per se* violative of public policy in Louisiana. *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 13-1977 (La. 7/1/14), 148 So.3d 871, 878. More recently, the Louisiana Supreme Court upheld the forum selection clause in a commercial property and casualty insurance contract, stating forum selection clauses are favored because the elimination of uncertainties relative to the location of litigation by agreement in advance on an acceptable forum to both parties is an indispensable element of trade, commerce, and contracting. *Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, 18-0748 (La. 5/8/19), 282 So.3d 1042, 1048. In *Creekstone Juban I*, the Supreme Court reemphasized that forum selection clauses are unenforceable and against public policy in very limited circumstances. *Id*.

*Insurance Contracts and the Louisiana Insurance Code*

An insurance policy is a contract, and as such, is the law between the parties. *See*, *e.g.*, *Muse v. Metro. Life Ins. Co.*, 193 La. 605, 192 So. 72 (1939); *Landry v. Progressive Sec. Ins. Co.*, 21-621 (La. 1/28/22), 347 So.3d 712. An insurer is entitled to impose contractual limitations on its liability and reasonable conditions on its obligations. *Id*. However, provisions of an insurance contract which violate statute or public policy are unenforceable. *Id*. "The insurance policy is a special contract in the sense that it is usually in a printed form furnished by the insurer and certain policy terms may be required by statute or governed by judicially

recognized considerations of public policy." 15 La. Civ. L. Treatise, Insurance Law & Practice § 1:4 (4th ed.), Interpretation of insurance policies.

The underwriting of insurance policies is a commercial activity uniquely affected with the public interest, and for this reason the Louisiana Legislature enacted the Louisiana Insurance Code for the purpose of regulating the insurance industry in all its phases. La. R.S. 22:2; *see Hammett v. Fire Ass'n of Philadelphia,* 157 So. 323, 328 (La. App. 2 Cir. 11/2/34), *aff'd*, 181 La. 694, 160 So. 302 (1935). The laws of this state relative to the insurance industry, and the relationship of insurers to their insureds and other interested parties, are contained in the twenty-two chapters of the Insurance Code. *See Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184, 189.

Engagement in the business of insurance in Louisiana must be in conformity with the Insurance Code. La. R.S. 22:12. The power to execute and enforce provisions of the Insurance Code is vested in the Louisiana Commissioner of Insurance. La. R.S. 22:2. The Insurance Code's regulatory scheme requires an "insurer" to be authorized to transact insurance business and defines the types of insurance which may be sold. La. R.S. 22:12. An "insurer" is defined as "every person engaged in the business of making contracts of insurance, other than a fraternal benefit society." La. R.S. 22:46(14). Insurers must be qualified by the Louisiana Insurance Commissioner for the type of insurance it offers for sale. La. R.S. 22:12.

Surplus lines insurers are one of more than a dozen types of insurers specifically regulated by the Insurance Code. La. R.S. 22:48(14). Surplus lines property and casualty insurance, the type of policy at issue in this case, is distinguishable from other types of insurance under the Insurance Code. Under Louisiana's statutory scheme, the vast majority of insurance policies offered in this state must be through insurers that are "admitted" in Louisiana as insurers

"authorized" by the Insurance Commissioner. However, recognizing that some consumers have insurable interests for which authorized insurers do not offer coverage, the Insurance Code provides for issuance of surplus lines insurance policies. *See Enterprise Leasing Co. of New Orleans v. Simmons*, 644 So.2d 1297, 1299-1300 (La. App. 4 Cir. 1995) (citing *Gray & Co. v. Stiles*, 221 So.2d 832, 833-834 (La. App. 1st Cir. 1969). Surplus lines insurers must receive "approved unauthorized" status by the Commissioner of Insurance and are permitted to offer and issue policies only through a licensed surplus lines broker.[5] To achieve "approved unauthorized" status, surplus lines carriers must demonstrate financial soundness and meet other consumer protection requirements mandated by the Insurance Code and/or the Commissioner of Insurance.[6] Unlike property and casualty insurance provided by approved authorized insurers, surplus lines property and casualty insurance policies are generally not subject to the same regulation of their policy terms and conditions and are not required to obtain approval from the Commissioner of the policy forms and rates.

*Forum Selection Clauses and Louisiana Revised Statute 22:868*

Following the Louisiana Supreme Court's 2019 decision in *Creekstone Juban I*, *supra*, the Louisiana Legislature amended[7] the part of the Louisiana Insurance Code concerning limitations on actions, La. R.S. 22:868, to state, in part:

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:
(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle responsibility laws of such other state or country.
(2) Depriving the courts of this state of the jurisdiction **or venue** of action against the insurer.
…

---

[5] *See* La. R.S. 22:432.
[6] *See* La. R.S. 22:431-46.
[7] *See* 2020 Act No. 307 (S.B. 156), effective August 1, 2020. The language stated herein reflects the current law and the law in effect at the time the parties contracted.

C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

**D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.**

(Emphasis supplied.)

By this language, La. R.S. 22:868(A) specifically prohibits choice of law provisions and forum selection clauses in Louisiana insurance policies as null and void. Defendant Starr claims that Subsection D of 868 "authorizes" surplus lines insurers to include forum or venue selection clauses. We disagree with Starr's proposed interpretation of this statute.

Interpretation of legislation is primarily the search for the legislative intent; the starting point is the language itself. *Cat's Meow, Inc. v. City of New Orleans*, 98-0601 (La. 10/20/98), 720 So.2d 1186, 1198. *See also* La. R.S. 24:177(B)(1). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. C.C. art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12. When analyzing legislative history, it is presumed the Legislature's actions in crafting a law were knowing and intentional, and the Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. *Louisiana Safety Ass'n of Timbermen Self-Insurers Fund v. Louisiana Ins. Guar. Ass'n*, 09-0023, (La. 6/26/09), 17 So.3d 350, 356; *Theriot v. Midland Risk Ins. Co.*, 95-2895, (La. 5/20/97), 694 So.2d 184, 186.

The assertion that Subsection D of La. R.S. 22:868 "authorizes" surplus line insurers to include forum selection clauses, as Starr claims, is an incorrect and incomplete reading of the statute. We observe first that the statute itself makes no

express reference to surplus lines insurers. Only by referencing other provisions in the Insurance Code can one understand which policy forms are or are not subject to approval from the Department.[8] In addition, Starr's claim ignores the first half of Subsection D that states "*the provisions of Subsection A of this Section* shall not prohibit a forum or venue selection clause." The plain, unambiguous meaning of this language is that Subsection D of La. R.S. 22:868 creates an exception to the general and broad prohibition on forum selection clauses in Louisiana insurance policies stated in Subsection A. The language of Subsection D does not expressly authorize the use of forum selection clauses in all surplus lines policies, rather, it creates an exception to the limits on such clauses stated in Subsection A of La. R.S. 22:868.

*Regulations Particular to Surplus Lines Insurance*

The analysis of whether the forum selection clause in the Starr surplus lines insurance policy is permissible under Louisiana law does not stop at La. R.S. 22:868, but requires us to review the rest of the Louisiana Insurance Code for relevant and applicable provisions. Statutes particular to surplus lines insurers are found in Chapter 2, entitled "Requirements for Insurers and Other Risk Bearing Entities," Part I entitled "Kinds of Insurers", Subpart O, entitled "Surplus Lines." La. R.S. 22:431, *et seq*. Louisiana Revised Statute 22:431 directs that liberal construction and application must be given to statutes concerning surplus lines insurance to promote six illustrative underlying purposes. Identified as underlying purposes of these statutes include:

(1) Protecting persons seeking insurance in this state.
(2) Facilitating the placement of surplus lines insurance with reputable and financially sound unauthorized insurers under the provisions of this Subpart.

---

[8] Specifically, La. R.S. 22:446(A) provides that the Commissioner of Insurance shall not require surplus lines insurers to file or seek approval of their forms for property insurance.

> (3) Establishing a system of regulation that permits orderly access to surplus lines insurance in this state and encourages authorized insurers to make new and innovative types of insurance available to consumers in this state.
>
> (4) Providing a system through which persons may purchase insurance from approved unauthorized insurers or eligible unauthorized insurers pursuant to this Subpart.
>
> (5) Protecting the revenues of this state.
>
> (6) Providing a system pursuant to this Subpart that subjects unauthorized insurance activities in this state to the jurisdiction of the commissioner of insurance and state and federal courts in suits by or on behalf of the state.

*See* La. R.S. 22:431.

One of the statutes that we are legally mandated to liberally construe and apply concerns the venue for suits against surplus lines insurers. Louisiana Revised Statute 22:442(A) states:

> An unauthorized insurer shall be sued, upon any cause of action arising in this state under any contract issued by it as a surplus lines contract, pursuant to this Subpart, in the district court of the parish in which the cause of action arose.

Clearview argues that the Legislature's use of the word "shall" makes the application of La. R.S. 22:442(A) mandatory. We agree. As used in statutes, the word "shall" is mandatory. *Warren v. HDI Glob. Ins. Co.*, 21-570 (La. App. 5 Cir. 5/16/22), 341 So.3d 1249, 1257, *writ denied*, 22-938 (La. 11/1/22), 349 So.3d 10, and 22-1002 (La. 11/1/22), 349 So.3d 5 (citing *McGlothlin v. Christus St. Patrick Hospital*, 10-2775 (La. 7/1/11), 65 So.3d 1218, 1228).

While the language of La. R.S. 22:442(A) has never before been interpreted in reported jurisprudence, the Louisiana Supreme Court has given meaning to the phrase "shall be sued" that is contained in other statutes. In *Black v. St. Tammany Par. Hosp.*, 08-2670 (La. 11/6/09), 25 So. 3d 711, 718–19, the Supreme Court examined the phrase "shall be sued" as contained in La. R.S. 13:5104(B) and 46:1063. "Shall be sued," the Court found, is the legislative expression of venue

applicable to all actions involving hospital service districts, which supersedes the general venue provisions of the Louisiana Code of Civil Procedure. *Id.* Similarly, the language of La. R.S. 22:442(A) clearly and unambiguously sets forth the exclusive venue for actions against surplus lines insurers for all causes of action arising in this state under a surplus lines insurance contract. There are no exceptions to this mandatory provision stated anywhere in the Louisiana Insurance Code.[9]

The Petition filed in this case is a first party claim for insurance coverage under a surplus lines policy for alleged damage to immovable properties located in Jefferson Parish, Louisiana. As such, the exclusive venue for this action is in the 24th Judicial District Court. In light of La. R.S. 22:442(A), we therefore declare the forum selection clause contained in the Starr surplus lines insurance policy null, void, and unenforceable.[10]

*Purported Conflict between Louisiana Revised Statutes 22:868 and 22:442*

Starr argues that La. R.S. 22:868 and 22:442 may be harmonized by reading La. R.S. 22:442(A) as establishing the default venue in Louisiana for actions against surplus lines insurers while La. R.S. 22:868(D) authorizes a surplus lines insurer and insured to contractually agree to a non-Louisiana venue for litigation. Alternatively, Starr argues that if there is a conflict between 22:442(A) and 22:868(D), then the latter must prevail based on its characterization of the latter being the more specific statute on the subject matter with the former being more general. Both of these arguments are without merit.

---

[9] In addition to identifying the venue for legal action arising from a cause of action in this state under a surplus lines contract, La. R.S. 22:442 also prescribes service of process against and jurisdiction over surplus lines insurers. Under paragraph B, the legislature designates the Louisiana Secretary of State as the agent for service of process for surplus lines insurers. La. R.S. 22:442(B). Further, service of process upon the Louisiana Secretary of State confers the court in which the legal action is filed with personal jurisdiction over the surplus lines insurer. La. R.S. 22:442(B).

[10] *See* La. C.C. art. 7, ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.")

First, Starr's claim that La. R.S. 22:442(A) merely presents a default venue is contradicted by the express use of the words "shall be sued" in that statute. As noted above, this language is mandatory, and has been used by the Legislature to express its intent to provide exclusive venue for particular actions. Had the Legislature intended the provision to be a default, it could have used the more permissive "may" to indicate that actions in other venues would be allowed. Furthermore, as noted above, the language of La. R.S. 22:868(D) does not expressly authorize a surplus lines insurer and insured to contractually agree to a non-Louisiana venue for litigation. The language of Subsection D is not an authorization, but rather a specific exception to the general prohibition on forum selection clauses in Louisiana insurance policies stated in La. R.S. 22:868(A).

Addressing Starr's alternative argument, we disagree with Starr's characterization of La. R.S. 22:868(D) as the more specific statute that must prevail. It is a well-settled rule of statutory construction that when interpreting potentially conflicting statutes, the statute specifically directed to the matter at issue prevails over a statute more general in character, unless there is legislative intent or expression regarding which statute is to control, such as the phrase "notwithstanding any other provision of law to the contrary." *Salathe v. Par. of Jefferson through Dep't of Sewerage*, 19-427 (La. App. 5 Cir. 7/15/20), 300 So.3d 460, 468, *writ denied*, 20-01027 (La. 11/4/20), 303 So.3d 642. In its statutory enactment identifying the court in which legal action is to be brought arising from a surplus lines insurance policy, the Louisiana Legislature did not include such language. The language of La. R.S. 22:442 is plain, clear, and unambiguous.

The declinatory exception of improper venue raises the question of where a legal action is to properly be brought. La. C.C.P. art. 925. La. R.S. 22:442 specifically addresses the venue where actions shall be brought against surplus lines insurers. In contrast, La. R.S. 22:868 states a general prohibition on forum

selection clauses in Louisiana insurance policies. There is no indication that the Legislature intended the additional language of La. R.S. 22:868(D) to supersede, alter, or repeal the mandatory venue provisions for surplus lines insurers of La. R.S. 22:442(A). On the contrary, as noted above, the express language of La. R.S. 22:868(D) makes it clear that it is an exception to the rule stated in La. R.S. 22:868(A), not to any other statute. Starr's argument is without merit.

CONCLUSION

Upon *de novo* review of relator's declinatory exception of improper venue, we find that the forum selection clause stated in the Starr surplus lines insurance policy no. SLSTPTY11446721 that requires any suit, action, or proceeding against Starr to be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York to be null, void, and unenforceable under La. R.S. 22:442(A), which mandates all causes of action arising under any contract issued by an unauthorized insurer as a surplus lines contract be brought in the district court of the parish in which the cause of action arose. Louisiana Revised Statute 22:868(D), which provides an exception to the general prohibition on forum selection clauses in Louisiana insurance policies stated in La. R.S. 22:868(A), does not supersede, alter, or repeal the mandatory venue provisions for surplus lines insurers stated in La. R.S. 22:442. Accordingly, the ruling of the trial court is affirmed and this writ is denied.

RICHARD'S CLEARVIEW, LLC                    NO. 24-C-114

VERSUS                                      FIFTH CIRCUIT

STARR SURPLUS LINES INSURANCE               COURT OF APPEAL
COMPANY
                                            STATE OF LOUISIANA


**SCHLEGEL, J., CONCURS WITH REASONS**

I concur with the majority's decision to deny Starr's declinatory exception of improper venue but for different reasons.

The seminal decision by the Louisiana Supreme Court in *Shelter Mutual Ins. Co. v. Rimkus Consulting Group, Inc. of Louisiana*, 13-1977 (La. 7/1/14), 148 So.3d 871, 878, held that forum selection clauses in contracts are generally enforceable and are not *per se* violative of public policy in Louisiana.

> We hold that [forum selection] clauses should be enforced in Louisiana unless the resisting party can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.... [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'

*Id.* at 881 (citation omitted.)

Additionally, in *Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, 18-0748 (La. 5/8/19), 282 So.3d 1042, 1048, the Louisiana Supreme Court determined that La. R.S. 22:868 "does not indicate that Louisiana has a strong public policy against forum-selection clauses in insurance contracts."

After *Creekstone*, the Louisiana legislature amended La. R.S. 22:868 in 2020 in two important respects. The legislature added the words "or venue" to La. R.S. 22:868(A)(2) and added a new section (D), which provides: "[t]he provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance."

24-C-114                                    1

Consequently, the current version of La. R.S. 22:868 provides in pertinent part:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:
> > (1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.
> > (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
> > ***
> C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
> D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

Also relevant to the analysis are the provisions of La. R.S. 22:446(A), which provide that "[t]he commissioner [of insurance] shall not require **surplus lines insurers** to file or seek approval of their forms and rates for property and casualty insurance except as provided in R.S. 22:1456(B)(2) relative to public carrier vehicles." (Emphasis added).

Thus, in light of the amendment to La. R.S. 22:868, I would find that surplus lines insurers fall under the exception created by the legislature under section D as they are not required to have their forms approved by the Insurance Commissioner. Accordingly, surplus lines insurers, like Starr, are generally permitted to include forum selection clauses in their policies. However, as noted in *Shelter Mutual*, forum selection clauses should be enforced, unless, as in this case, the clause would contravene a strong public policy of the forum in which suit is brought, as declared by statute. *Shelter Mut. Ins. Co.*, 148 So. 3d at 881.

The insurance policy issued by Starr contains more than a forum selection clause though. It also includes a choice of law provision. The combined "Choice of Law and Choice of Venue" provision of the subject policy states:

> No suit, action, or proceeding regarding this POLICY for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this POLICY. The COMPANY agrees that any suit, action, or proceeding against it for recovery of any claim under this POLICY shall not be barred if commenced within the time prescribed in the statutes of the State of New York. Any suit, action, or proceeding against the COMPANY must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York. **The laws of the State of New York shall solely and exclusively be used and applied** in any such suit, action, or proceeding, without regard to choice of law or conflict of law principles. (Emphasis added).

This language creates a dilemma for the Court because the record in this case indicates that if this case is transferred to New York, Starr will argue in the New York courts that New York law applies.[1] And it appears from the decision rendered in *Louisiana Revitalization Fund LLC v. Starr Surplus Lines Insurance Co.*, No. 23CV1006VSBVF, 2024 WL 1337617 (S.D.N.Y. Mar. 27, 2024)(Figueredo, Mag. J., Report and Recommendation) that the New York courts would apply New York law to the subject contract, which would be in direct violation of Louisiana's strong, public policy against choice of law provisions in insurance contracts as set forth in La. R.S. 22:868(A)(1).

In the *Louisiana Revitalization Fund* case, the same defendant, Starr, and even some of the same attorneys who represent Starr, were involved. Moreover, the case had the same choice of law provision, involved property damage in Metairie, Louisiana resulting from Hurricane Ida and was initially filed in the 24th Judicial District Court before being removed to the Eastern District of Louisiana. The Eastern District then transferred the case to the United States District Court for

---

[1] Starr's answer to the petition and answer to the first amended complaint asserts as a 31st affirmative defense that "[t]he Policy contains a New York choice of law provision. Plaintiff's claims fail under New York law, which the Policy requires be applied in this action."

the Southern District of New York based upon the forum selection clause in the contract just like Starr is requesting here.  The plaintiffs filed a motion for partial summary judgment asking for a determination that Louisiana law apply because La. R.S. 22:868 prohibits choice of law provisions that apply the laws of other states.  After conducting an extensive choice-of-law and conflict-of-law analysis though, the Magistrate Judge concluded that New York Court of Appeals precedent required application of New York law given the parties' choice-of-law provision in the policy.

It stands to reason then that the same analysis in *Louisiana Revitalization Fund* will occur in the case at bar if this Court grants Starr's exception and transfers this case to New York.

Whether New York or Louisiana law applies in this case makes a difference to plaintiffs.  If New York law applies, then plaintiffs will not be able to assert their claims regarding Starr's alleged bad faith under La. R.S. 22:1973 and 22:1892.

For all of the above reasons, while I concur in the result, I do not agree with the majority's opinion that La. R.S. 22:868 and 22:442(A) specifically prohibit forum selection clauses in Louisiana insurance policies from surplus lines insurers.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JUNE 5, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
**CURTIS B. PURSELL**
CLERK OF COURT

## 24-C-114

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
KEVIN W. WELSH (RELATOR)          LEE ANN C. THIGPEN (RELATOR)          RICHARD P. VOORHIES, III (RESPONDENT)
WILLIAM A. BAROUSSE (RESPONDENT)

### MAILED

H. ALTON JOHNSON, III (RELATOR)
ATTORNEY AT LAW
400 CONVENTION STREET
SUITE 1100
BATON ROUGE, LA 70802